STATE *ex rel. v.* MAYOR AND ALDERMEN OF DYERSBURG *et al.*

(*Nashville,* December Term, 1950.)

Opinion filed January 13, 1951.

662

J. BARRET ASHLEY, of Dyersburg, for complainants.

M. WATKINS EWELL, of Dyersburg, for defendants.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Section 15, Subsection 5, Item (1) of the Tennessee Sales Tax Act, Chapter 3, Public Acts of 1947, provides that when the receipts from that tax exceed $20,000,000 in any fiscal year, then 80% of such excess (this excess being called "overage funds") "shall be paid to the several Counties of the State" pro rated by a specified formula, and that the funds so paid to the respective counties "shall be earmarked and used only for educational purposes, aid to dependent children, aid to the blind and as old age assistance".

A certain percentage of the portion of this tax going to each of the four large counties of Shelby, Davidson, Knox and Hamilton is directed by this Act to be paid to the cities of Memphis, Nashville, Knoxville and Chattanooga, but those exceptions are not material to decision of the questions here, since these counties are obviously in a class quite different from that to which belong all the other counties of the State.

Chapter 108 of the Public Acts of 1949 purported to amend this section of the Sales Tax Act so as to provide that in counties having a population of not less than 34,900 nor more than 35,000 (only Dyer County) 40% of the amount of the overage fund going to such county shall be paid to those municipalities in that County which have a population of not less than 10,000 nor more than 10,250 (Dyersburg only), and 20% to such municipalities in said county as have a population

of not less than 760, nor more than 800 (only the Town of Trimble).

By bill filed on relation of the Tennessee Commissioner of Education, joined in by the Dyer County Board of Education and certain Dyer County taxpayers, it is sought to procure a decree adjudging this Chapter 108 repugnant to Article 11, Section 8 of the Tennessee Constitution, in that, so it is alleged, Chapter 108 purports to suspend the operation of the general law, Section 15, of the Sales Tax Act, to the prejudice of Dyer County, while permitting the application of this general law to all the other counties of the State within the same classification as that to which Dyer County belongs.

Excepting the four counties of our State in which our cities of Memphis, Nashville, Knoxville and Chattanooga are located, Dyer County is an average county of Tennessee as to wealth, physical area and population as a whole, and as divided between its urban and rural areas. Section 15, Subsection 5, Item (1) of the Sales Tax Act gives to each of such counties within this class its pro rata part of 80% of this overage sales tax collections. Chapter 108 purports to make an exception of Dyer County by taking from it 60% of its pro rata part of this overage fund, and gives that 60% to two of its three municipalities. This is the discrimination which the complainants say violates Article 11, Section 8 of our Constitution.

The defendants to the bill are the Towns of Dyersburg and Trimble, the county trustee, and the attorney general of the State. The answer of the attorney general is formal, but the Towns of Dyersburg and Trimble insist that Chapter 108 is not unconstitutional in any respect.

The Trial Court held that Chapter 108 did violate Article 11, Section 8 of our Constitution in undertaking to so discriminate against Dyer County and directed the Trustee to pay over the funds involved to Dyer County. Dyersburg and the Town of Trimble have appealed. Out of abundance of precaution these appellants have assigned thirty-one errors. With the exception of whether the proper parties have brought this suit, the determinative question is whether Chapter 108 of the Public Acts of 1949 is constitutional.

Before entering into a consideration of the question stated, it is perhaps appropriate to observe that Chapter 17 of the Public Acts of 1949 amended Section 15 of the 1947 Sales Tax Act so as to provide for a distribution of the funds now involved in a manner different from that provided by Section 15 of the 1947 Act. This amendment became effective on and after July 1, 1949. Therefore, no funds collected under the Sales Tax Act on or after July 1, 1949 are involved in this suit.

Code, Section 2314(16) provides that it shall be the duty of the State Commissioner of Education to call upon the District Attorney or other specified official to recover or protect any school funds that have been wrongfully lost or in danger of such loss according to the reports made to the Commissioner, provided the Governor shall first give his approval. The caption of the bill recites that it is brought in the name of the State on relation of its Commissioner of Education. That bill is likewise signed by the State Commissioner over a statement that he is joining as a party complainant with the approval of the Governor and with the understanding that neither he individually nor the State be held responsible for any costs that may accrue. Dyersburg and Trimble insist

that this suit is actually being prosecuted by the Dyer County Board of Education through an attorney employed by it and not by the State Commissioner of Education as required by Code, Section 2314(16).

The Dyer County Board of Education does have a very material interest in whether a substantial sum of money shall be taken from it by an act which it thinks is unconstitutional. It would be unfortunate if the effect of Code, Section 2314(16) prevented that Board from instituting suit for the purpose of having it judicially determined whether Chapter 108 is unconstitutional. A decision of this point, however, is not necessary. The State Commissioner of Education expressly says in the bill that he is joining in the prosecution of the suit and has done this with the consent of the Governor. That is a compliance with Code, Section 2314(16) sufficient to permit the suit to be maintained on relation of the Commissioner.

The general law, Section 15 of the Sales Tax Act of 1947, insofar as now applicable to this suit, ''earmarked'' the funds in litigation here as funds payable to Dyer County ''for educational purposes'', among others. That general law likewise so earmarked the portion going to each of the other counties of the State coming within the same general classification as Dyer County. It is purported by Chapter 108 to deprive only Dyer County of these funds, while leaving undisturbed the funds going by this general law to each of all the other counties in this class of which Dyer County is a member.

Insofar as those funds are ''earmarked'' for educational purposes, the result is that Dyer County is affected in its governmental capacity by this Chapter 108.

*State ex rel. Bales* v. *Hamilton County,* 170 Tenn. 371, 95 S. W. (2d) 618; *Baker* v. *Milam,* Tenn. Sup., 231 S. W. (2d) 381.

■ A special Act which as to a single county purports to suspend the general law applicable to all other counties of the same class contravenes Section 8, Article 11 of our Constitution, even though it affects that single county in its governmental capacity, if there be an absence of any valid reason for such discrimination. *Baker* v. *Milam,* supra, and cases there cited.

No valid reason for this discrimination against Dyer County is made to appear upon the face of Chapter 108. The reasons assigned by these two towns for this discrimination is that the only public high schools in Dyer County are those operated by these two municipalities and one other, and that Dyer County furnishes high school facilities to its high school children only by means of a long term contract with each of these three towns, whereby county high school students have the right to attend one or the other of the high schools operated by these three municipalities in Dyer County. It is said that the third town, Newbern, is not made a beneficiary of this purported discrimination against Dyer County, because the County Board of Education had sometime previous to the enactment of Chapter 108 appropriated $20,000 to the building or to assist in the building of a gymnasium at Newbern.

■ Code, Section 2393.16 provides that one of the ways by which a county may provide its high school students with high school facilities is by means of a contract entered into between such county and one or more of its municipalities, whereby county high school students may attend the high school operated by the municipality.

We have no alternative other than to presume that the county and each of the two municipalities here involved entered into such a contract for their mutual advantage, and that Dyer County is paying Dyersburg and Trimble a consideration which was sufficiently attractive to induce these two municipalities to enter into that agreement. Thus Dyer County is furnishing high school facilities to its high school students in one of the manners provided by the State School System, just as each of the other counties in this class is furnishing such high school facilities in one of the ways provided by this system.

If the Act in question is constitutional, Dyersburg and Trimble will receive until 1962 all that to which they are entitled under their respective contracts with Dyer County for the attendance of Dyer County high school students in their municipal high schools. But by reason of Chapter 108 Dyer County will receive only 40% of the overage funds in question which were given to it by Section 15 of the Sales Tax Law for educational purposes, the remaining 60% being given to Dyersburg and Trimble. All other such counties in the State in the same class have received 100% of that given to each of them by this general law, and this discrimination against Dyer County is purported, notwithstanding the fact that it is fulfilling its legal obligation to its high school students in one of the manners authorized by law.

■ With deference to the earnestness and skill with which the cause of Dyersburg and Trimble have been pressed upon this Court, it feels compelled to conclude that the reason assigned for the purported discrimination against Dyer County is without substance. Nor is

this Court able to imagine any reason having substance for this discrimination against Dyer County. We must, therefore, concur with the conclusion of the Chancellor that Chapter 108 of the Public Acts of 1949 is invalid in that it will violate Section 8, Article 11 of our Constitution in the manner stated.

Perhaps it is not inappropriate to here call attention to the fact that in the case of *State ex rel. Milligan* v. *Jones,* 143 Tenn. 575, 578, 224 S. W. 1041, 1042, this Court observed that the public school system of this State "has developed into a great plan of the state government", and that the State has gradually developed a system which "is a great system and has many features, all of which may well be said to be essential". It properly spends tremendous and frequently increasing sums of money for the preservation and improving of that system. As observed in *Donathan* v. *McMinn County,* 187 Tenn. 220, 235, 213 S. W. (2d) 173, 179, the Legislature "has attempted by general law to provide for one system of public schools in all the counties of the State". Article 11, Section 8 of our Constitution has often prevented local dissatisfactions and disagreements between various well meaning and sincere groups of a county from bringing about, without warrant, a departure in that county from that single state system so essential to the preservation and improvement of the means of educating our youth.

The decree will be affirmed with the costs of the appeal adjudged against Dyersburg and the Town of Trimble and the sureties on their bonds.

All concur.