330

BOARD OF EDUCATION OF THE MEMPHIS CITY SCHOOLS

*v.*

SHELBY COUNTY TENNESSEE, et al.

CITY OF MEMPHIS

*v.*

SHELBY COUNTY, TENNESSEE, et al.

*(Nashville,* December Term, 1959.)

Opinion filed June 6, 1960.

Rehearing Denied September 9, 1960.

Order Granting Leave to File Petition September 30, 1960.

Petition to Amend Dismissed October 26, 1960.

334

EVANS, PETREE & COBB, Memphis, for Board of Education of Memphis City Schools.

LARRY CRESON, Memphis, EDWIN F. HUNT, Nashville, LAUGHLIN, WATSON & CRESON, Memphis, of Counsel, for Shelby County Board of Education.

E. W. HALE, JR., County Attorney for Shelby County, Memphis, DAVID HANOVER, HANOVER, HANOVER & WALSH, Memphis, of Counsel, for Shelby County.

EDWARD P. RUSSELL, Memphis, for Riley C. Garner, County Trustee.

FRANK B. GIANOTTI, JR., E. BRADY BARTUSCH, Memphis, for City of Memphis.

GEORGE F. McCANLESS, Attorney General, for the State.

Mr. Special Justice S. A. Marable delivered the opinion of the Court.

The Board of Education of the Memphis City Schools, a corporation created and existing under the laws of the State of Tennessee for the purpose of conducting a public educational system within the boundaries of the City of Memphis, filed a bill in the Chancery Court of Shelby County, Tennessee, on May 15, 1959, against Shelby County, Tennessee, Riley C. Garner, County Trustee, Shelby County Board of Education, and George F. McCanless, Attorney General of the State of Tennessee, seeking the relief hereinafter mentioned; and, on June 30, 1959, the City of Memphis, a municipal corporation of the State of Tennessee and of Shelby County, filed a bill in the same court and against the same defendants named above, and seeking substantially the same relief sought by the complainants in said first bill.

Although no formal order of consolidation of said two causes was ever made by the Chancery Court, such right

being reserved by that court upon due application of the complainants, the two causes were heard together and one opinion rendered by the Chancellor disposing of both causes, and upon appeal to this Court both causes were argued and heard together; therefore, we shall follow the same pattern established and consider and dispose of the issues presented in both suits by one opinion, especially since the issues are the same in both suits.

The complainants are seeking (1) a declaratory judgment to the effect that Chapter 711 of the Private Acts of 1947, as amended by Chapter 351 of the Private Acts of 1955, and the last sentence of Section 8(1) (c) of the General Education Act for 1959, embodied in Chapter 14 of the Public Acts of 1959, together with Chapter 752 of the Private Acts of 1929 and Chapter 488 of the Private Acts of 1937, be declared invalid and unconstitutional, and that it be declared the duty of the defendants, Shelby County and the Shelby County Trustee, to divide both the School Tax and the County School Bond Funds on an average daily attendance basis between said County and the complainants; and (2) that the complainants have and recover of said defendants their average daily attendance share of the $8,000,000 County School Bond issue sold on March 31, 1959.

The defendant, Honorable George F. McCanless, Attorney General of the State of Tennessee, filed an answer to each of said bills stating that the statute, the constitutionality of which the complainants have attacked, is applicable only to Memphis and Shelby County, and is not of statewide effect, and that the bills contain no averment of fact or prayer for relief which affects generally the public school system of Tennessee, and that said defendant is, therefore, without interest in the matters set

forth in the bills, and is not a proper party to said suits. This defendant took no further action in the causes.

The defendant, Shelby County Board of Education, first filed an answer to each of said bills, but subsequently was permitted by the court to withdraw said answers and file demurrers in lieu therof.

The other defendants, Shelby County and Riley C. Garner, County Trustee, filed demurrers to both of the bills.

The causes were, therefore, heard by the Chancellor on said demurrers filed by the three defendants named, and decrees were entered in the causes sustaining certain grounds of the demurrers, upholding the constitutionality and validity of the statutes attacked by the complainants, and dismissing said two bills.

The causes are now before this Court on appeal from the decrees of the Chancery Court, and assignments of error have been duly submitted which will be considered hereinafter.

A brief history of prior legislation leading up to the questions involved in these suits may be summarized as follows:

The first General Education Act in Tennessee was Chapter 115, Public Acts of 1925, entitled "An Act to establish and maintain a uniform system of Public Education". A substantial part of this enactment is still contained in the official Tennessee Code Annotated and forms a part of the general law pertaining to education in this State. This Act, by Section 10 thereof, directed the County Trustee to distribute all State and County elementary school funds between the County and incorporated city or cities of said County on the basis of aver-

age daily attendance of pupils of the respective school systems. No different or special provision was made for the distribution of said school funds with respect to Shelby County, or any other county in the State, but such distribution was uniform throughout the State, as contemplated by the caption of said Act and provided in the body thereof. Section 10 of Chapter 115, Public Acts of 1925, later became Section 2348 of the Code of Tennessee, and is now a part of Section 49-206, Tennessee Code Annotated.

In 1929, Chapter 752 of the Private Acts for that year was enacted. This Act purported to amend Chapter 115, Public Acts of 1925, but limits the amendment by population to Shelby County only. This Act provided for the distribution of school funds between Shelby County and the City of Memphis on a fifty-fifty basis, that is, one-half of said funds to go to the County Board of Education and one-half thereof to go to the incorporated Board of Education of the City. The Act applied to all local school funds raised by the County and authorized local school boards to vary the division of said funds by contract.

There was no General Education Bill enacted in 1927, 1929, 1931, 1933, or 1935. In these years, State appropriations for schools were covered by the General Appropriation Bills.

In 1937 there was enacted an Education Appropriation Bill, separate and distinct from the General Appropriation Bill. Such Education Appropriation Bill was Chapter 127, Public Acts of 1937, but same did not purport to provide for the distribution of local school funds.

Also in 1937, there was enacted Chapter 488, Private Acts of 1937, applicable to Shelby County only, by population classification, which, among other things, provided for a distribution of local school funds equally between the County and the City, that is, one-half of such funds to the County Board of Education and one-half thereof to the Board of Education of the City. Section 2 of this Act is substantially the same as the second paragraph of Section 1 of Chapter 752, Private Acts of 1929.

In 1939, 1941, 1943 and 1945, there were Education Appropriation Acts, but none purported to provide for distribution of local school funds between County and City.

In 1947, the General Education Bill, for the first time since 1925, contained any reference to the distribution of local school funds between County and City. This Act, Chapter 8, Public Acts of 1947, has embodied in Section 16 thereof, the following provision:

"All local elementary school funds raised or collected by any non-equalizing county shall be apportioned by the county trustee among the county, and the cities and special school districts therein, in the manner provided by paragraph five of Section 2348 of the Code of Tennessee, *unless otherwise provided by Private Act. This paragraph shall not be construed to affect Chapter 752, Private Acts of 1929, but said Act shall continue in full force and effect.*" (Emphasis supplied.)

Paragraph five of Section 2348 of the Code of Tennessee provided for the distribution of all state and county elementary school funds between a county and incorpo-

rated city or cities of said county on the basis of average daily attendance.

Also in 1947, subsequent to the enactment of Chapter 8, Public Acts of that year, there was enacted Chapter 711 of the Private Acts of 1947, applying to Shelby County only by population. This Act purported to provide for a division of State and Federal school funds between the County and the City on the basis of average daily attendance, but provided for the distribution of local school funds raised by the County on a different basis of forty per cent to the County and sixty per cent to the City. This Private Act was later amended by Chapter 351 of the Private Acts of 1955 so as to change the division of such local school funds to fifty per cent to the County and fifty per cent to the City.

Chapter 351, Private Acts of 1955, was enacted subsequent to the constitutional amendments adopted in 1953, including the amendment to Article 11, Section 9, requiring that local Acts affecting a county or city shall receive approval by a two-thirds vote of the legislative body of the county or the city. It appears that the passage of this Act was opposed by the Board of Education of the Memphis City Schools, but apparently the legislative bodies of the City of Memphis and of Shelby County approved the same subsequently. See page 1174 of the Private Acts of 1955.

By Chapter 9, Public Acts of 1949, there was enacted a General Education Act, which contained the following provision under Section 16 thereof:

"All local elementary school funds raised or collected by any non-equalizing county shall be apportioned by the county trustee among the county, and

the cities and special school districts therein, in the manner provided by paragraph five of Section 2348 of the Code of Tennessee, *unless otherwise provided by Private Act. This paragraph shall not be construed to affect Chapter 711, Private Acts of 1947, but said Act shall continue in full force and effect.*" (Emphasis supplied.)

The General Education Act of 1951, Chapter 132 of the Public Acts of that year, contained a provision identical to that above quoted; however, this Act was held unconstitutional for formal deficiencies in the case of *City of Nashville v. Browning,* 192 Tenn. 597, 241 S.W.2d 583.

Chapter 70, Public Acts of 1953, being the General Education Act for that year, expressly repealed Chapter 9, Public Acts of 1949, and, in Section 13 thereof, after providing for the distribution of all current school revenues received by the County Trustee from County and State sources for school purposes, and all local school funds, to the county, cities and special school districts therein, on the basis of the average daily attendance maintained by each in grades one through twelve during the preceding school year, also contained the following sentence at the end of said particular paragraph of said Section:

"* * * This paragraph shall not be construed to affect Chapter 711, Private Acts of 1947, but said Act shall remain in full force and effect."

The General Education Acts for the years 1955 and 1957 both had identical provisions concerning Chapter 711, Private Acts of 1947, as in the Act of 1953.

The General Education Act of 1959, Chapter 14, Public Acts of 1959, in Section 8, sub-sections (1) (c), after pro-

viding for the apportionment of county school funds, except the funds raised by any local special tax levy in a non-equalizing county for transportation purposes, among the counties, cities and special school districts therein, on the basis of the average daily attendance maintained by each in grades one through twelve during the current school year as defined in said Section, contains the following language at the end of said sub-sections:

"However, any county school system, and any other school system in the same county, which have been dividing, or may decide to divide, local school funds on any different basis may continue or determine to do so by Act of the Legislature, as in Chapter 711 of the Private Acts of 1947, as amended."

Chapter 14, Public Acts of 1959, expressly repealed the General Education Act of 1957, hereinabove mentioned, as that Act and each similar Act before it expressly repealed the next preceding General Education Act prior thereto.

Apparently since 1929, the defendant, Shelby County, Tennessee, has been dividing its school money between the Shelby County Board of Education and the Board of Education of the Memphis City Schools, in accordance with the provisions of the several Private Acts hereinabove mentioned.

It appears from the bills filed in these causes that the average daily attendance of pupils in the City School System, as of March 31, 1959, shortly preceding the filing of said bills, and also being the date of the bond issue here in question, constituted 77.37 per cent of the total average daily attendance of pupils in both the County and City school systems.

It further appears that the County first began issuing bonds for school purposes in 1948, and that nine bond issues have been sold since said date. The proceeds of four of said bond issues were divided between the County and the City school systems by written agreement of the two School Boards, the proceeds of two of said issues were retained by the County, and apparently the proceeds of the other bond issues were divided by the County between the County Board of Education and the Board of Education of the Memphis City Schools under the provisions of Chapter 711, Private Acts of 1947, and as amended. However, the complainants herein are not seeking to obtain any further shares or portions of the proceeds of the first eight of said bond issues, and are asking for relief only with respect to the last of said bond issues, that of March 31, 1959, for the total amount of $8,000,000.

On April 13, 1959, the complainant, Board of Education of the Memphis City Schools, through its attorney, addressed a letter to the County Trustee making demand for a proportional share of the bond issue of March 31, 1959, for $8,000,000, on basis of the average daily attendance of pupils in the Memphis City Schools as of March 31, 1959. Subsequently, the County delivered to said complainants a check for $4,000,000, representing fifty per cent of the aforesaid bond issue, which action was evidently taken by the County under the assumed authority of Chapter 711, Private Acts of 1947, as amended, and the last sentence of Section 8, sub-sections (1) (c), of Chapter 14, Public Acts of 1959. Immediately thereafter, said complainant, through its attorney addressed a letter to the Superintendent of Schools and the County Board of Education of Shelby County advising that said

check would not be accepted in satisfaction of complainant's demand for an average daily attendance share of said $8,000,000 bond issue, but would be applied toward payment of said demand. No further action was taken by either of the parties thereafter until the bills were filed in these causes. The complainants insist that the Board of Education of the Memphis City Schools', or the City's, share of said bond issue is the sum of approximately $6,189,600, and that, after crediting said amount with said check for $4,000,000, there is left the sum of $2,189,600 due complainants.

Turning to the primary question involved in this litigation, the Chancellor very aptly stated the principal contentions of the complainants, which have been met by demurrers on the part of the principal defendants, as follows:

"The basic contention of the two complainants is that this Court should declare unconstitutional Chapter 711 of the Private Acts of 1947, as amended by Chapter 351 of the Private Acts of 1955, and the last sentence of Section 8(1) (c) of the General Education Act of 1959, the General Education Act being contained in Chapter 14 of the Public Acts of 1959.

"It is the contention of the complainants that the Private Acts, and that part of the Public enactment complained of, are violative of Article 2, Section 17, Article 1, Section 8, and Article 11, Section 8, of the Constitution of this State."

While there is a strong presumption that an Act of the Legislature is valid, such presumption must necessarily yield in the face of any constitutional provision to the contrary.

Our duty here is to determine whether the particular statutes, or parts thereof, challenged by the complainants in their bills in these causes, come within the limitations of the above mentioned provisions of our State Constitution, or are violative thereof.

■ The general purpose and plan of the Education Acts passed by the Legislature of Tennessee, beginning with the Act of 1925, referred to hereinabove, was to establish and maintain a *uniform system* of public education in this State, public education being primarily a State function. The philosophy permeating such general uniform plan, as set out in said General Education Acts, in so far as pertinent to the issues in these causes, provides for a division of all county school funds, with the exception of funds for the transportation of pupils attending the public schools, between the County School System and the School systems operated by municipalities or special school districts, such as the City of Memphis and its Board of Education, within the county, on a proportional basis of the average daily attendance of pupils attending the various schools in a county.

Mr. Justice Tomlinson, in *State ex rel. Dyer County v. Mayor and Aldermen of Dyersburg,* 191 Tenn. 661, 235 S.W.2d 814, 817, said:

"Perhaps it is not inappropriate to here call attention to the fact that in the case of *State ex rel. Milligan v. Jones,* 143 Tenn. 575, 578, 224 S.W. 1041, 1042, this Court observed that the public school system of this State 'has developed into a great plan of the state government', and that the State has gradually developed a system which 'is a great system and has many features, all of which may well be said to be essential'.

It properly spends tremendous and frequently increasing sums of money for the preservation and improving of that system. As observed in *Donathan v. McMinn County*, 187 Tenn. 220, 235, 213 S.W.2d 173, 179, the Legislature 'has attempted by general law to provide for one system of public schools in all the counties of the State.' Article 11, Section 8 of our Constitution has often prevented local dissatisfactions and disagreements between various well meaning and sincere groups of a county from bringing about, without warrant, a departure in that county from that single state system so essential to the preservation and improvement of the means of educating our youth.''

The Private Acts involved in this litigation apply only to one county, that of Shelby, and were never intended to apply to any other county. Unless given vitality or legal efficacy by the challenged provisions of the General Education Acts, which will be considered more fully hereinafter, these Private Acts clearly attempt to suspend the general education law designed to apply to all counties of the State, with respect to the allocation of local school funds, and to change the general scheme for the apportionment of such funds as contemplated by said first General Education Act of 1925 and embodied in all subsequent General Education Acts.

With respect to the Private Act of 1929, which unquestionably was an attempt to suspend the general law in favor of one county of the State, Mr. Justice Prewitt (now Chief Justice) said in the case of *Davidson County v. City of Nashville*, 190 Tenn. 136, 138, 228 S.W.2d 89, 90:

"The Private Act of 1929, applicable to Shelby County undertook to change the allocation of school funds different from the general education law. * * *

"The Private Act of 1929 was never intended to affect any county in the State other than Shelby."

In said Davidson County case, the Court expressly held that a statute applicable to Davidson County, and being substantially the same as Chapter 752, Private Acts of 1929, applying to Shelby County, was invalid, and in this connection said:

"It is next insisted that Chapter 822, Private Acts of 1949, is a constitutional enactment. We think defendant's counsel are correct in their view that this Act, which has to do with the allocation of school money and the distribution of educational funds, affects Davidson County in its governmental capacity. However, this does not mean that the Act is valid because it affects Davidson County in its governmental capacity.

" '* * * the legislature may constitutionally enact a special act affecting one particular county or municipality alone in its political or governmental capacity, provided such special act is not contrary to the provisions of a general law, applicable to all the counties or municipalities. In the latter event, the discrimination must be upon a reasonable basis. Otherwise, it is void.' *Town of McMinnville v. Curtis,* 183 Tenn. 442, 448, 192 S.W.2d 998, 1000.

" '* * * In *Gilliam v. Adams,* 180 Tenn. 74, 171 S.W. 2d 813, a private act which applied only to Henderson County and regulated the employment of school teachers as to qualifications, salaries, etc., was held invalid

because it was in conflict with the general school law and in violation of Article XI, Section 8, of the Constitution." *Southern v. Beeler,* 183 Tenn. 272, 284-285, 195 S.W.2d 857, 863.

"The Private Act of 1949, by its provisions, radically changes the allocation of school funds from the General Education Bill of 1925, Williams' Code, sec. 2306 et seq., and, therefore under our authorities, must fail."

In *Cagle v. McCanless,* 190 Tenn. 128, 136, 285 S.W.2d 118, 121, opinion by Mr. Chief Justice Neil, the Court said, in holding unconstitutional and invalid a private act applying to Hamilton County, in which an attempt was made to abolish the office of Superintendent of Public Instruction in that county and create the office of Director of Schools with the same duties and responsibilities, as follows:

"* * * Moreover for us to sustain the Act there would be chaos in the State's general educational system. Every county would be privileged to adopt an educational system all its own. This would be an intolerable situation and contrary to the accepted fact that public education in Tennessee rests upon the solid foundation of *State authority* to the exclusion of county and municipal government."

If, by such private act, as we have here under consideration, any county in the State could change the distribution or allocation of school funds, the very life blood of the public school system, from the way and manner provided by the general law, and take from the State its authority to regulate the distribution of such funds, such would disrupt "the single state system so essential to

the preservation and improvement of the means of educating our youth", possibly result in as many different methods of allocating local school funds as there are counties or school systems in the State, and could easily open the flood-gates leading to other such changes in the general law to the end that our single uniform system of public education would be destroyed, and chaos in our educational system would, indeed, be the consequence.

Chapter 488 of the Private Acts of 1937 occupies the same status as Chapter 752, Private Acts of 1929, and is subject to the same infirmities. Neither of these Acts had even colorable support from any public enactment of the Legislature, even if such had been of any value.

Chapter 711, Private Acts of 1947, which, as amended, is the principal statute, along with the last sentence of Section 8, sub-sections (1) (c), of Chapter 14, Public Acts of 1959, here under consideration. This Private Act was enacted shortly after the passage of Chapter 8, Public Acts of 1947, the General Education Act of that year, and, as heretofore stated, unless validated by said Public Act, or subsequent Public Acts, must stand on no higher ground than the preceding Private Acts on the same subject.

. Our courts have consistently stricken down and declared invalid special legislation and private acts applicable to a single county which in any way alter or suspend the general law. A few of these cases are, *Gallien v. Miller*, 170 Tenn. 93, 92 S.W.2d 403; *State ex. rel. Bales v. Hamilton County*, 170 Tenn. 371, 95 S.W.2d 618; *Knox County v. State ex rel. Nighbert*, 177 Tenn. 171, 147 S.W. 2d 100; *Gilliam v. Adams*, supra; *Phillips v. West*, 187 Tenn. 57, 213 S.W.2d 3; *Donathan v. McMinn County*,

supra; *Cagle v. McCanless,* supra; and *Davidson County v. City of Nashville,* supra.

In the case of *Sandford v. Pearson,* 190 Tenn. 652, 657, 231 S.W.2d 336, 338, the Supreme Court, speaking through Mr. Justice Gailor, said:

"Our cases make a clear distinction between (1) Private Acts which confer special benefits and impose special burdens on the citizens of one county, when there is no general statute, and when before the Private Act, there was only the common law, and (2) those Private Acts which undertake to amend or abrogate a prior general statute in its application to a particular county or class of counties. Private Acts of the former class have been upheld, and those of the latter class struck down."

Nothing appears on the face of any of the Private Acts here in question to show any reasonable basis for any discrimination in favor of Shelby County, nor does the record reveal any such fact. In the case of *Sandford v. Pearson,* supra, the Court, in this connection, further stated:

"* * * In the Act passed, the Legislature makes no attempt to justify the classification, and that justification was a legislative, not a judicial function. Justice Cook's dissenting opinion, *Darnell v. Shapard,* 156 Tenn. 544, 566, 3 S.W.2d 661."

The case of *Baker v. Milam,* 191 Tenn. 54, 231 S.W.2d 381, is neither controlling nor persuasive in this case, as the Private Act involved therein was upheld on the ground of "urgent necessity", and the Act disclosed on

its face a reasonable basis for the discrimination. Such is not the case here.

It is argued that Shelby County is the largest and wealthiest county in the State, and that it has different problems concerning its educational systems than other counties. We are unable to follow this reasoning. Fundamentally the same problems and the same general situation exists in Shelby County as in all of the other counties respecting its educational system, in proportion to population and wealth. Education of the youth of each county is the primary purpose of our State Educational System, as reflected throughout all of its General Education Acts, and the apportionment of local school funds under the general law on the basis of average daily attendance of pupils in the various schools gives to every school system its proportional and fair share of said funds, so, in a sense, each pupil may be afforded the same opportunity to obtain an education, regardless of place of residence. The larger the county, scholastic-population-wise, and the attendance of pupils therein in the schools of such county, the larger amount of funds its school systems are entitled to receive. Such is equality and equity, and such is the spirit of the general statute on the subject.

Our courts, of course, will not hold legislative enactments unconstitutional because of any questionable wisdom of such enactments, or whether such will ultimately redound to the public good, or whether contrary to natural justice and equity, and our observations above are not solely for that purpose.

Certainly Chapter 711, Private Acts of 1947, as amended by Chapter 351, Private Acts of 1955 standing alone,

under our authorities, many of which are cited herein-above, constitutes a patent attempt to change and suspend the General Education Law of this State with respect to the allocation of local school funds for the benefit of one county, and could not be upheld under Article XI, Section 8, of the State Constitution.

While it is unnecessary to discuss at length the General Education Acts from 1947 to 1957, inclusive, with respect to the provisions purporting to give validity to Chapter 711, Private Acts of 1947, and as amended, all of which Public Acts have been repealed, leaving only Chapter 14, Public Acts of 1959, now in force, it may be noted that the Public Acts of 1947 and 1949, after providing for a uniform method of apportionment of local elementary school funds raised or collected by any non-equalizing county, contained the following language at the end of said particular paragraph of said Acts:

"* * * unless otherwise provided by Private Act. This paragraph shall not be construed to affect Chapter 711, Private Acts of 1947, but said Act shall continue in full force and effect."

The General Education Act of 1951, heretofore held unconstitutional for other reasons, contained the identical language above quoted, while the General Education Acts of 1953 to 1957, inclusive, contained only the last sentence above quoted.

■■ It is not within the province of the Legislature to direct the courts of the State how its enactments shall be construed. It is the duty of the Legislature to enact laws, and then it becomes the duty of the courts, when the question is properly raised, to construe such laws. Therefore, the last sentence above quoted, appearing in

all of said Public Acts from 1947 to 1957, inclusive, is without force or effect, and can only be considered as surplusage.

Unless the phrase, "unless otherwise provided by Private Act", appearing in said Public Acts was sufficient to give force and validity to said Private Act, then there is nothing in said Public Acts to justify the Court in holding that such Private Act is valid thereunder. We shall consider this question hereinafter in giving consideration to the questions raised with respect to the last sentence in Section 8, sub-sections (1) (c), of Chapter 14, Public Acts of 1959, which sentence has been hereinabove quoted.

With greatest respect to the learned and able Chancellor, who was of the opinion that said sentence above referred to was built in and made a part of the General Education Law of 1959, and, therefore, sufficient to give force and validity to said Chapter 711, Private Acts of 1947, as amended, we find ourselves unable to reach the same conclusion.

With the exception of the sentence in question, Chapter 14, Public Acts of 1959, contains a complete and uniform system of public education in Tennessee, including the method of apportioning said local school funds in non-equalizing counties. It sets forth the single and uniform system applicable throughout the State. Then, at the end of said paragraph dealing with the allocation of such school funds, the Legislature undertook to suspend what it had expressly enacted, that is, the general law, in favor of any one county, and in this case especially Shelby County, and to pass a law for the benefit of one county, and the individuals therein, inconsistent with the general laws of the land. This, in our opinion, is in vio-

lation of Article XI, Section 8, of the Constitution of Tennessee, which reads as follows:

"The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie (immunities) or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law. * * * "

The Constitution makes no distinction between the right of the Legislature to suspend any general law for the purposes set out in the quoted provision above, by Public Act or by Private Act. If such cannot be done by Private Act, as the authorities have uniformly held, then it cannot be done by any appended provision, or amendment, of a Public Act, or by any subsequent Public Act. Said constitutional provision expressly withholds all such power from the Legislature. The following cases, in principle, lend support to this conclusion: *Woodard v. Brien,* 82 Tenn. 520; *Burkholtz, v. State,* 84 Tenn. 71; *Stratton Claimants v. Morris Claimants,* 89 Tenn. 497, 15 S.W. 87, 12 L.R.A. 70; *State ex rel. Thompson v. Cummins,* 141 Tenn. 318, 210 S.W. 161; *Matill v. City of Chattanooga,* 175 Tenn. 65, 132 S.W.2d. 201; *Taylor Theater v. Town of Mountain City,* 189 Tenn. 690, 227 S.W.2d 30; *State ex rel. Dyer County v. Mayor & Aldermen of Dyersburg,* supra; *Southern v. Beeler,* supra; and *Davidson County v. City of Nashville,* supra.

It is argued that the language of the sentence in question, contained in said General Education Act of 1959, is applicable to every county school system in the State and gives to all the right to obtain the same privileges granted Shelby County by Chapter 711, Private Acts of 1947, as amended, and, therefore, is of general application, and not solely for the benefit of one county. However, it should be noted that the language does not vest in any other county or county school system the privileges purported to be granted Shelby County under its Private Act but reserves to the Legislature the right to grant such privileges by future Private Acts. Under this Act, any authority for school systems to change the apportionment of local school funds from the manner provided by the general law must yet come from the Legislature by Private Act. In other words, the Legislature has undertaken to authorize a suspension of the general law by Private Act, which cannot be done under the State Constitution. Furthermore, notwithstanding the language of said Public Act, the Legislature could take such action, with reference to the passage of any such Private Act as it might see fit at the time, either passing or rejecting the same. Then, too, there is the matter of the Home Rule Amendment to the Constitution, and any results thereunder would be speculative. The result, therefore, of any such attempted legislation is that there is no absolute assurance given that any other county school system can avail itself of the same privileges attempted to be granted Shelby County under Chapter 711, Private Acts of 1947, as amended. Any privileges purported to be granted other school systems of the State, by the aforesaid disputed sentence of Section 8, sub-sections (1) (c), of Chapter 14, Public Acts of 1959, are contingent, specu-

356

lative, lacking certainty, and dependent upon future action of the Legislature.

The complainants have sufficiently presented the question of the constitutionality of the Acts attacked in their bills in these causes, to enable the Court to consider and determine the validity of said Acts.

■ ■ We are of the opinion, as heretofore indicated, that said last sentence in Section 8, sub-sections (1) (c, of Chapter 14, Public Acts of 1959, here in controversy, is not so interwoven into the said Public Act as to become an integral or substantial part thereof, but that it is, in effect, a separate statement or provision appended to the end of the paragraph in said Act which sets forth the general law with reference to the apportionment of elementary school funds of the counties throughout the State, and an attempt to suspend the general law on said subject in violation of Article XI, Section 8, of the State Constitution, and, therefore, without force and void. Under the severability clause of said Public Act, the language contained in said sentence thereof can easily be elided, without in any manner impairing the efficiency of the statute, leaving the remaining parts of said Act in full force and effect, and such is hereby directed.

■ Likewise, as previously stated, it is our opinion that Chapter 711, Private Acts of 1947, as amended by Chapter 351, Private Acts of 1955, is in violation of the aforesaid constitutional provision, and also void and ineffective.

Assignments of error Nos. 1, 2, 3, 4 and 5, filed by the complainant, Board of Education of the Memphis City Schools, and assignments of error Nos. 1, 2, 3, 4 and 5, filed by the complainant, City of Memphis, are sustained.

In view of our holding that said Private Act and said sentence in said Public Act, here in controversy, are invalid, under the above mentioned constitutional provision, which action is determinative of the issues in these suits as to the validity of said legislative enactments, we deem it unnecessary to consider the other assignments of error filed by the complainants.

In addition to the appeal perfected by the two complainants in these causes, the defendants, Shelby County and Riley C. Garner, County Trustee, also prayed and were granted appeals from the action of the Chancellor in failing to act or rule on certain grounds of their demurrers, and have filed four assignments of error in each of said suits.

The assignments of error filed by said defendants-appellants in the cause of *Board of Education of the Memphis City Schools v. Shelby County, Tennessee, et al.,* will be first considered.

The first of said assignments is that the Chancellor erred in failing to rule on Ground No. 1 of the demurrer of said defendants, which ground is that the Board of Education of the Memphis City Schools is not a proper party, and has no right to bring this suit, it being averred that the power to bring such suit is vested alone in the Commissioner of Education of the State of Tennessee by sub-section 15 of Section 49-105, Tennessee Code Annotated.

The Code Section relied upon by the defendants in support of said assignment was amended by Chapter 91, Public Acts of 1957, now contained in the 1959 Cumulative Supplement to said Code, as appears in the following language:

"This provision, however, shall not prohibit suits by one political subdivision against another political subdivision in the same county, or against the county, when the consent of the state commissioner of education and the governor has not been obtained."

In addition to the foregoing authority, we think that the cases of *State ex rel. Dyer County v. Mayor and Aldermen of Dyersburg*, supra; *Phillips v. West*, supra; *Buena Vista Special School District v. Board of Election Commissioners*, 173 Tenn. 198, 116 S.W.2d 1008; and other applicable authorities, amply uphold the right of said Board of Education of the Memphis City Schools to bring such suit as now before us.

Furthermore, it appears from an amendment to the original bill that the complainant, Board of Education of the Memphis City Schools, advised the State Commissioner of Education of its intention to challenge the constitutionality of the Acts in question, and that the Commissioner stated that this litigation involved the distribution of local school funds rather than State funds, and that the 1957 amendment to Section 49-105 of the Code made it unnecessary for him to join in the litigation, and that the Commissioner has been kept advised of each step in this proceeding. The answer filed by the defendant, George F. McCanless, Attorney General of the State, supports said statement by the State Commissioner of Education.

We find no reason to hold that the Board of Education of the Memphis City Schools is not a proper party to this litigation, or that it has no right to bring such suit. We conceive it to be the plain duty of any such Board to exercise every legal means for the protection

and preservation of funds that may belong to the school system which it operates.

The second of said assignments is that the Chancellor erred in failing to rule on Ground No. 2 of said demurrer, which ground is that the bill shows that said complainant is a creature of the Legislature, and that the Legislature has not authorized said complainant to file this suit.

 Chapter 30, Acts of 1869, creating the Board of Education of the Memphis City Schools, provides, as follows:

"That the Memphis City Schools shall hereafter be placed under the exclusive management and control of a Board of Education consisting of two members from each ward of the said city, elected as hereinafter directed, and that said Board are hereby created and constituted a body politic and corporate by the name and style of the Board of Education of the Memphis City Schools who shall have succession for ninety-nine years, and by the name and style aforesaid, may purchase, receive, hold and possess property of any kind for the use of said City Schools; may sue and be sued, plead and be impleaded; answer and be answered unto in all Courts of Record and Courts of inferior jurisdiction. And said Board shall have power to make, have and use a common seal, the same to break, alter and renew at their pleasure, and generally to do and execute all acts, matters and things which a corporation or body politic in law may and can lawfully do and execute."

Other Acts of the Legislature have been enacted, and a number of decisions rendered by our Supreme Court, pertaining in some respects to said Board of Education,

but we have not been able to find, nor have we been cited to, any specific authority withdrawing from said Board its right to receive and control the funds for the operation of the public schools in said city, or its right to bring suit in connection therewith. We think that, under said charter provisions, other applicable laws, and what we have said hereinabove in discussing said first assignment of error, said Board of Education is fully empowered to bring the suit here being considered.

The defendants' assignment of error No. 3 is that the Chancellor erred in failing to rule on Ground No. 9 of their demurrer, which in substance, is that the Acts here in question affect the County of Shelby in the exercise of its governmental functions, that the Legislature has power to pass special laws affecting particular counties, municipalities or school boards as governmental agencies, and, therefore, neither of said Acts violate either Article 1, Section 8, or Article XI, Section 8, of the State Constitution.

The fact that said Acts may affect a county in its governmental functions does not mean that the Acts are valid, and they would still be subject to judicial construction and determination as to their validity. *Davidson County v. City of Nashville,* supra; *Southern v. Beeler,* supra.

In this connection we refer to the quotation hereinabove from the case of *Davidson County v. City of Nashville,* and to the following additional statement from the case of *Town of McMinnville v. Curtis,* supra (183 Tenn. 442, 192 S.W.2d 999):

"We are further of the opinion that should it be considered or assumed that the act is designed pri-

marily to affect McMinnville as a governmental agency, rather than being primarily designed to confer a special privilege upon all its citizens, still the act must be held in violation of the Constitutional provision mentioned.

"It is, of course, settled law that special legislation affecting particular counties or municipalities in their governmental or political capacities may be enacted without violating Article XI, Section 8 of the Constitution. *Knoxville, City of, v. State ex rel. Hayward,* 175 Tenn. 159, 167, 133 S.W.2d 465. Many such acts have been upheld by this Court. But in those cases the special act either was not in conflict with the provisions of the general law, or the classification was upon a reasonable basis. This is not true as to the act under consideration. The provisions of this act are in sharp and direct conflict with the provisions of the general law."

The foregoing statement of the Court is directly applicable to the causes now before this Court. As to the Acts involved herein, we have previously held hereinabove that said particular enactments are violative of Article XI, Section 8, of the Constitution of Tennessee.

■ Assignment of error No. 4 is that the Chancellor erred in failing to rule on the amendment to the demurrer of the defendants, Shelby County, Tennessee, and Riley C. Garner, Trustee, which ground is that the City of Memphis, through its agent, the Board of Education of the Memphis City Schools, is operating its school system under its charter and private acts, and thus is excluded, or excepted from the general law, as contemplated by Section 49-306, Tennessee Code Annotated.

The school system in the City of Memphis is not operated under the City's charter, but under a separate charter granted to the Board of Education of the Memphis City Schools by the aforesaid Act of the Legislature of 1869. The status of the complainant, Board of Education, appears to have been determined by this Court in the case of *Barnett v. City of Memphis,* 196 Tenn. 590, 594, 269 S.W.2d 906, 907, where the Court said:

"We are of the opinion that an incorporated school district is not a municipal corporation but is in the same class with counties and occupies the same legal status."

While the original bill shows that, in order to operate the local school system, an additional amount in school taxes, above the amount received from the county school taxes, must be paid by the taxpayers of the City of Memphis, there is no showing that the City levies a separate elementary school tax or attempts to operate said schools under the city charter.

This Court said, in the case of *State ex rel Smith v. City of Chattanooga,* 176 Tenn. 642, 645, 144 S.W.2d 1096, 1097, as follows:

"We wish to emphasize the fact that it is only where the city *operating under its charter levies an elementary school tax for operating expenses other than for grounds, buildings, and equipment that it is excepted from the general law. The burden of showing this fact is on complainants, and they have failed to carry this burden."* (Emphasis supplied.)

In the cause of *City of Memphis v. Shelby County, Tennessee, et al.,* assignments of error Nos. 1 and 4 are sub-

stantially the same as assignments Nos. 1 and 4 in the cause of *Board of Education of the Memphis City Schools v. Shelby County, Tennessee, et al.,* hereinabove considered and assignment No. 2 is the same as assignment No. 3 in said first cause, and it is unnecessary to further discuss these assignments as our responses to said previous assignments are equally applicable here. However, we might add that the City of Memphis certainly has a sufficient interest in the subject of this litigation, especially with respect to the constitutionality of the legislative enactments in question, to maintain its suit for a declaratory judgment respecting said matters.

In addition to what has been said with reference to the right of the Board of Education of the Memphis City Schools to maintain its suit herein, as hereinabove set out, a municipal corporation has implied power under the common law to bring suits generally, and this right has never been abridged by any act of the Legislature. The following authorities, among others generally support the right of the City to sue herein; *Jonesboro v. McKee,* 10 Tenn. 167; *Board of Park Commissioners v. City of Nashville,* 134 Tenn. 612, 185 S.W. 694; *Miller v. Washington County,* 143 Tenn. 488, 226 S.W. 199.

Assignment of error No. 3, in said second cause here being considered, is that the Chancellor erred in failing to rule on Ground No. 9 of said defendants' demurrer, which is, in substance, that the City of Memphis waived its rights under Section 49-711, Tennessee Code Annotated, and is now estopped or precluded from taking a position inconsistent with said Private Act of 1947, and said sentence of the Public Act of 1959, here in controversy, because the Board of Commissioners of the City

of Memphis, by official action on April 5, 1955, approved in conformity with Article XI, Section 9, of the State Constitution, the division of school funds as provided by Chapter 351, Private Acts of 1955.

We do not think that the action complained of could in any manner affect the right of the City, or the Board of Education of the Memphis City Schools, to challenge the constitutionality of said Acts, or to seek a judicial declaration as to their validity, and the rights of the parties thereunder.

If Chapter 711, Private Acts of 1947, is unconstitutional, and we have so concluded, any resolution or action taken by the Board of Commissioners of the City of Memphis approving or purporting to recognize the existence of an amendment to said Act could not make the Act constitutional or change its legal status. If an act is invalid, any action thereunder would be without legal efficacy upon the determination of such fact.

In *Cagle v. McCanless,* supra, the Court said.(199 Tenn. 128, 285 S.W.2d 121):

"We respect the wishes of the citizens of Hamilton County, as expressed in the referendum approving the Act here involved. But their wishes add nothing to the validity of the statute. In other words, if the Act was unconstitutional prior to the referendum it continued to be."

In *Wilson v. Wilson,* 137 Tenn. 590, 597, 195 S.W. 173, 174, the following language was used by the Court:

"The fact, therefore, that an act has been construed and enforced and passed upon by this court is not conclusive of its validity and constitutionality, *and this*

*question may be raised at any time when the facts and pleadings justify its consideration."* (Emphasis supplied.)

■ Therefore, the unchallenged existence of unconstitutional legislation, for any length of time, even after parties have accepted the same and had rights determined thereunder by the courts, cannot clothe such invalid laws with the mantle of validity.

■ To constitute a waiver, a party must have full knowledge of his rights in the premises. *Prewitt v. Bunch,* 101 Tenn. 723, 725, 50 S.W. 748. There is no showing in these causes that the Board of Commissioners of the City of Memphis had any knowledge of the invalidity of said Private Act, when they undertook to approve the amendment thereto.

"* * * While a citizen is presumed to know the law he is not presumed to know that a statute, which the Supreme Court presumes to be constitutional, is unconstitutional. So said the Supreme Court of the United States, in *United States v. Realty Company,* 163 U.S. 427, 438, 16 S.Ct. 1120, 1125, 41 L.Ed. 215." *State for Use and Benefit of Lawrence County v. Hobbs,* 194 Tenn. 323, 332, 250 S.W.2d 549, 553.

Said Commissioners, of course, were not attempting to pass upon the constitutionality of the Act in question, and had no right to legally adjudicate such question.

■ A waiver is not operative where it would infringe on the rights of others or would be against public policy. *Shirley v. Shirley,* 181 Tenn. 364, 181 S.W.2d 346. Even if it could be said that the action of the Board of Com-

missioners of the City of Memphis, in approving the 1955 amendment to Chapter 711, Private Acts of 1947, was, in effect a waiver of the City's right to subsequently challenge the constitutionality of said Act, which we do not think can be correctly said, such action would infringe on the rights of others who are citizens of said City and County, and would be against public policy; therefore, any such so-called waiver would be inoperative.

For the reasons hereinabove expressed, we find no merit in any of the assignments of error submitted by the defendants-appellants in these causes, and the action of the Chancellor in failing to rule on said grounds of demurrer was in no manner prejudicial to the rights of said defendants, and was without material error. All of said assignments of error, submitted by said defendants-appellants, are, therefore, overruled.

With reference to the second question raised by the pleadings, that of the right of the complainant, Board of Education of the Memphis City Schools, to recover of the principal defendants herein the sum of $2,189,600, representing the remainder of the share of the $8,000,000 bond issue of March 31, 1959, claimed by said complainant under the general law, we are of the opinion that, under all of the circumstances appearing, this claim must be denied.

It appears that since the County began the issuance of school bonds in 1948, no legal action was taken by either of the complainants to obtain any different apportionment of such funds than that purported to be authorized by Chapter 711, Private Acts of 1947, and as amended. While the record shows that the Board of Education of the Memphis City Schools made some objection to the

passage of said 1955 amendment to said Private Act, objected to the division made of the proceeds of three of said bond issues, and that four of said bond issues were divided by written agreement between the parties, it does not appear that the division of any of said funds was made on any other basis than that purported to be authorized by said Chapter 711, Private Acts of 1947, and as amended, in the same manner as other school funds of the County. The presumption would be that the law apparently in effect at the time was followed or complied with by the parties.

Said Private Act, presumed to be valid and to be so regarded until the contrary is made to appear by some competent judicial tribunal, provided for a certain division, between the Board of Education of the Memphis City Schools and the County Board of Education, of *"all school funds* collected or received by the County officers or other authorities of such Counties, whether from County levy, poll taxes, Circuit or County Clerk's collections, or escheats, *or any other source of whatever nature* * * *."* (Emphasis supplied.) Apparently, the intention of the Legislature, in passing said Private Act, was to provide for a division, between the two School Boards, of all local and county school funds of every nature, including the proceeds of County bond issues for public school purposes throughout the county.

In addition to the dealings between the two School Boards, with reference to the division of the proceeds of previous school bond issues, seemingly in view of the aforesaid Private Act, it further appears that the legislative body of the City approved the amendment of 1955 to said Private Act, as shown by the Acts and records of

the Legislature, of which we can take judicial notice. Under these circumstances the County apparently proceeded with the bond issue of March 31, 1959, in anticipation of a division of the proceeds thereof in accordance with said Private Act. The Board of Education of the Memphis City Schools did not give any notice to the defendant County, prior to said bond issue of March 31, 1959, that it would object to any division of said bond issue proceeds under said Private Act and demand a division thereof under the general law, such notice having only been given after the bonds were authorized and issued by the County. We think that the principle of equitable estoppel is applicable here, in so far as said bond issues are concerned, but that such principle would have no application to any right of the parties to question or challenge the constitutionality of said Private Act, or any other Act of the Legislature.

In *State v. Hobbs,* supra, the Court quoted with approval from *Roberts v. Roane County,* 160 Tenn. 109, 123, 23 S.W.2d 239, 243, as follows:

" 'The authorities cited do not question the general rule, that an unconstitutional statute is not a law, does not of itself confer any rights, duties, or obligations, and is "in legal contemplation, as inoperative as though it had never been passed". *Norton v. Shelby County,* 118 U.S. 425 6 S.Ct. 1121, 1125, 30 L.Ed. 178. But it is recognized that parties may so deal with each other upon the faith of such a statute that neither may invoke the aid of the courts to undo what they themselves have done.'

"* * * Conceding only for the purposes of this decision that the Acts herein assailed were unconstitutional,

they are presumed to be valid and must be so regarded until the contrary is made to appear by some competent judicial tribunal. In *Wade v. Board of Com'rs,* 161 Okl. 245, 17 P.2d 690, 692, it was held:

" 'The general rule is that laws are presumed to be constitutional, and ministerial officers may safely rely thereon and follow them until they are held unconstitutional or until such officers are advised by the proper officers that they are unconstitutional.' ". Citing several authorities.

It results, from our conclusions hereinabove stated, that Chapter 711, Private Acts of 1947, as amended by Chapter 351, Private Acts of 1955, together with the last sentence of Section 8, sub-sections (1) (c), of Chapter 14, Public Acts of 1959, must be held to be violative of Article XI, Section 8, of the Constitution of Tennessee, and, therefore, without force and invalid. The action of the Chancellor in sustaining the validity of said statutes and dismissing said bills, is accordingly reversed.

Hereafter, all local county school funds of Shelby County, and the proceeds of all school bond issues in said County, will be apportioned and distributed in accordance with the general laws of the State governing such matters.

We wish to express our appreciation to counsel for all of the parties for the very excellent manner in which the issues in these causes have been presented, and especially for the fine briefs submitted by each. We have endeavored to give consideration to the many authorities cited in support of the several contentions of the parties, but it would prolong this opinion to an unreasonable length and be a most arduous undertaking to discuss each and every case cited, consequently we have limited our reference to such

authorities as we deem to be necessary and sufficient to support our conclusions herein.

## On Petitions to Rehear

The appellees, Shelby County Board of Education, Shelby County, Tennessee, and Riley C. Garner, County Trustee, have filed very courteous and dignified petitions to rehear in these causes, and we have endeavored to give earnest and careful consideration to the matters contained therein.

After reviewing the record and the authorities cited by the petitioners, we think that our original opinion correctly determines the issues presented in these causes, and that the petitions to rehear contain no new argument or authority not heretofore considered by the Court, and no material fact has been pointed out as having been overlooked. We believe that the answers to all of the material points raised by the petitions are to be found in the opinion previously filed herein, and for that reason it is deemed unnecessary to discuss in detail the points relied upon in the petitions now before us, and we respectfully refer to said opinion for any response to said matters.

It is observed, however, that some questions are raised in the petitions respecting the construction of certain language used by the Court in said opinion, which we will notice briefly.

The petition of Shelby County Board of Education contains the following statements, concurred in by the other petitioners:

"The Court has declared in its opinion, page 20, that 'It is not within the province of the Legislature to direct the Courts of the State how its enactments shall be con-

strued.' We respectfully submit that this premise represents a complete departure from existing law. The legislative intent *controls* the construction of statutes."

The language quoted from our opinion herein was in no sense intended, nor do we think could be fairly construed, to state a premise representing a complete departure from existing law on the subject. It was simply a reannouncement of a general principle of the law that has been followed by our Courts for many years respecting the distribution of limited powers between the executive, the legislative, and the judicial branches of our government. There is no argument about the legislative intent governing the construction of statutes, as this is a well settled principle of law. The point is that, ultimately, it is the duty of the Courts to construe legislative enactments, when any questions relative thereto are properly presented, and to ascertain the intent of the legislature, the meaning of such enactments, and determine whether or not the enactments come within the limits of the Constitution. There can be no arbitrary control of this power vested in the Courts of our State.

In the case of *Erwin v. State,* 116 Tenn. 71, 96, 93 S.W. 73, 80, the Supreme Court said, in considering certain enactments of the Legislature:

"This legislation could only be effective from the date of its passage. The attempt therein, in substance, to construe the former acts and establish their relations during the former years, was wholly futile, since this was the assumption of a power belonging not to legislative department of the government but only to the judicial."

In an early case, *Governor v. Porter,* 24 Tenn. 165, the Court held as follows:

"With regard to this section of the Act, with the highest respect for the legislature as a coordinate branch of the government, we are constrained to say that we regard it as clearly an unconstitutional enactment, and whenever that is the case, it becomes the solemn duty of the judiciary to so declare it, as the Constitution is the paramount law. The argument upon this point may be stated in a few words. Under the Constitution the powers of the government are divided into three distinct departments—the legislative, executive, and judicial. And each department is prohibited from exercising any of the powers properly belonging to either of the others. See Art. 2, secs. 1, 2, N. & C. 50. It is upon this division of power that the security of the citizen, as well as the limitations upon power contained in the Constitution, mainly depend for their preservation. *To the legislature belongs the power of enacting such laws, within the limits of the Constitution, as the policy of society and its varying interests may seem to require. But, after their enactment, it is then the province of the judiciary to ascertain their meaning, and determine upon their construction. Any other doctrine would destroy the checks contained in the Constitution against the abuse of power, and tend to a concentration of all power in a single department of the government.* It is unnecessary to dwell upon this point farther than merely to say the legislature of 1835 enacted a law in reference to the collection of the revenue. That of 1839-40, without repealing that law or enacting a different one so far as the first section of the act is concerned, which we are now considering, which it

was perfectly competent for them to do, undertake to say what is the meaning of the former law, and to decide upon its construction. This we think was beyond their power.'' (Emphasis supplied.)

Among many other pronouncements of our Supreme Court on this general subject we find and quote the following:

''It is for the legislature to pass the law, and for the court to expound it.'' *Fisher's Negroes v. Dabbs,* 14 Tenn. 119, 136.

''It is the business of the legislature to declare what shall be law; it is the province of the court, and not the legislature, to say what is the law.'' *Watson v. Hoge,* 15 Tenn. 344, 353.

''The legislature has not the constitutional power to construe a statute, or to give a mandate to the Courts as to how they shall construe them * * *'' *Arrington, Trustee v. Cotton,* 60 Tenn. 316, 319.

Other decisions of interest may be found in the following cases: *Lonas v. State,* 50 Tenn. 287, 302; *Pope v. Phifer,* 50 Tenn. 682 704; *Biggs v. Beeler,* 180 Tenn. 198, 219, 173 S.W.2d 144, 946, 153 A.L.R. 510; *Hoover Motor Exp. Co. et al. v. Railroad & Public Utilities Commission et al,* 195 Tenn. 593, 603, 261 S.W.2d 233.

The petitioners further raise some question in their petitions with reference to the construction of the following language used by the Court on page 17 of the opinion:

''Nothing appears on the face of any of the Private Acts here in question to show any reasonable basis for any discrimination in favor of Shelby County, nor does the record reveal any such fact.''

374

It is the contention of the petitioners that by the use of this language the Court has disregarded the wide range of discretion available to the Legislature to making classifications, and "has placed the burden upon the Legislature of justifying its classification and apparently of justifying the same *on the face of the Act.*" This contention is wholly unsupported and is foreign to any intention or thought on the part of the Court. The language so used was never intended to establish any new rules, or effect any change in any of the well known rules, applicable to classifications in legislation, and any assumption to the contrary is without merit.

It will be noted that the language in question appears in the opinion only a few lines preceding the statement of the Court in distinguishing the case of *Baker v. Milam,* 191 Tenn. 54, 231 S.W.2d 381, strongly relied upon by the appellees-petitioners, from the causes here under consideration, and read in connection with certain statements in the Baker case, and with the following statement quoted from our opinion, shows the primary reason for its incorporation in the opinion:

"The case of *Baker v. Milam,* 191 Tenn. 54, 231 S.W. 2d 381, is neither controlling nor persuasive in this case, as the Private Act involved therein was upheld on the ground of 'urgent necessity', and the Act disclosed on its face a reasonable basis for the discrimination. Such is not the case here."

We attribute little, if any, significance or materiality to the aforesaid statement appearing on page 17 of our opinion, in so far as the issues in these causes are concerned.

The petitions to rehear are accordingly overruled.

Order Granting Leave to File Petition.

SWEPSTON, JUSTICE.

This cause came on to be heard upon the application of Shelby County, Tennessee and Riley C. Garner, Trustee, defendants in the above-styled causes, for leave to file their petition to clarify, modify or amend the decree heretofore entered in this cause on the 29th day of June, 1960, and for good cause shown and upon consideration of same, it appearing that such leave should be granted;

It Is Therefore Ordered, Adjudged and Decreed that leave is granted to the said defendants, Shelby County and Riley C. Garner, Trustee, to file their petition to clarify, modify or amend the decree of June 6th, 1960, and said defendants are given up to and including the 30 day of September, 1960, to file same with the Clerk of this Court.

On Petition to Amend, etc., Decree.

S. A. MARABLE, SPECIAL JUSTICE.

These causes have heretofore been heard and determined upon demurrers to the original bills, and a decree was duly entered on June 6, 1960, in accordance with the Court's opinion herein disposing of all questions raised by the demurrers.

After petitions to rehear had been overruled by the Court, the defendants, Shelby County, Tennessee, and Riley Garner, County Trustee, filed a petition in these causes on September 21, 1960, praying "that this Court clarify, modify or amend its decree heretofore entered on the 6th day of June, 1960, so that same shall be applicable to the 1961 taxes levied and collected, and for each

and every year thereafter, as provided by law''; that is, the petitioners seek to have the effective date of the decree extended so as to begin with the 1961 assessment and collection of taxes in Shelby County.

The complainants, Board of Education of the Memphis City Schools and the City of Memphis, filed a response to said petition opposing the relief sought by the petition, and on October 5, 1960, the petitioners filed a replication to said response.

After giving careful consideration to all of the matters contained in said petition, response and replication, including the arguments of the able counsel for all parties included therein, and in view of the entire record in these causes, it is our opinion that the petition should be dismissed, and it will be so ordered.