### STATE ex rel. AMVETS POST 27, et al., Plaintiff/Appellant,

### v.

### BEER BOARD OF the CITY OF JELLICO, Tennessee, Defendant/Appellee.

Supreme Court of Tennessee, at Knoxville.

Oct. 6, 1986.

Michael G. Hatmaker, Jacksboro, for plaintiffs/appellants.

Terry M. Basista, Jacksboro, for defendant/appellee.

OPINION

HARBISON, Justice.

In this case the holder of a valid liquor-by-the-drink permit, issued pursuant to Chapter 4 of Title 57, Tennessee Code Annotated, challenges the authority of a municipal beer board to deny it a beer permit for on-premises consumption under Chapter 5 of the same title.

An ordinance of the City of Jellico authorizes only five beer permits within the city limits. That number was issued and outstanding when appellant made its application. For that reason the application was denied. The Chancellor held that the beer board had acted properly and denied a writ of mandamus sought by appellant. We affirm.

Appellant actually sought mandamus against the city beer board for its refusal to take action upon an application for a local permit. The application was filed on or about March 23, 1983, and no formal action had been taken by the city beer board when the present complaint was filed on October 4, 1985, more than two and

one-half years later. Nevertheless it appears that from the outset appellant and its counsel were advised by appellee of the reason for its refusal to issue a permit or to hold a hearing, and the real issue between the parties was litigated and decided in the Chancery Court. Such facts as either party desired to adduce were apparently submitted by stipulation, and the matter was heard on its merits. While the beer board probably should have formally denied the application in reliance upon its ordinance and permitted review to proceed under T.C.A. § 57–5–109, subsections (d) *et seq.*, no procedural irregularities appear to have affected the merits of the case.

The dispensation of alcoholic beverages by the drink in hotels and other establishments and subject to specified conditions was authorized by 1967 Tenn.Pub. Acts, Ch. 211. That statute has been amended many times since its original enactment.

As pertinent here, T.C.A. § 57–4–102 permits the Tennessee Alcoholic Beverage Commission to issue a license for on-premises consumption of alcoholic beverages and beer to a "club." That term is defined in some detail in the statute, and the Commission is given authority by rules and regulations to make further definitions and to impose additional requirements upon applicants seeking a club license. In general such an applicant must be a nonprofit organization having at least 100 members regularly paying dues. There is no question that appellant has met all of the statutory requirements and the regulations of the Tennessee Alcoholic Beverage Commission.

In general "alcoholic beverages" and "beer" are separately defined and regulated in the numerous and detailed Tennessee statutes dealing with their manufacture, distribution and sale. Specifically for the purposes of Chapter 4 of Title 57 the term "alcoholic beverage" or "beverage" does not include beer with an alcoholic content of five percent or less by weight. *See* T.C.A. § 57–4–102(t). Beer and other malt beverages are defined in other statutes as

being those having an alcoholic content of not more than five percent by weight, except wine. *See* T.C.A. § 57–6–102.

Pertinent to the present case is T.C.A. § 57–4–101(b) which provides:

"It shall further be lawful to sell wine and other alcoholic beverages as herein defined, and malt beverages as defined in § 57–6–102, to be consumed on the premises of any premiere type tourist resort or club as hereinafter defined, to guests of such resort and to members and guests of members of such clubs, subject to the further provisions of this chapter other than § 57–4–103." [1]

It is clear from this provision that it is lawful to sell beer on the premises of a club such as appellant. Absent any other statutory provisions or regulations, no local beer permit or license would be required by the holder of a club license from the Alcoholic Beverage Commission. Part 2 of Chapter 4 of Title 57 provides that that Commission shall administer the provisions of the entire chapter, T.C.A. §§ 57–4–101 through 57–4–308. *See* T.C.A. § 57–4–201(a). The statutes contain detailed provisions for the applications to be made by clubs, including the submission of certificates of good moral character from city or county officials where the club is located. *See generally* T.C.A. § 57–4–201(c). There are provisions for review by the Commission of the arbitrary refusal of local officials to issue a certificate of good moral character. T.C.A. § 57–4–201(c)(2).

In its regulations concerning clubs and other liquor-by-the-drink establishments, the Alcoholic Beverage Commission makes reference to the sale of "malt beverages." It limits their use to sale for consumption on the premises only, with the container being opened by employees of the establishment for the customer being served. *See* Reg. 0100–1–.03(9). The regulations pertaining to applications for clubs refer to written approval of use and occupancy by

---

1. The statutory provision not applicable, T.C.A. § 57–4–103, has to do with municipal referenda on the issue of on-premises consumption of alcoholic beverages.

local officials where applicable. Reg. 0100-1-.05(5)(b)8.

The application submitted by appellant to the Alcoholic Beverage Commission and the license issued by that body are not in the record before us. Neither has the Alcoholic Beverage Commission been made a party to the action.

Essentially it is the position of appellant that once a club or other permittee under Chapter 4 has been issued a license for on-premises consumption of alcoholic beverages and beer by the Tennessee Alcoholic Beverage Commission, then local beer boards must automatically and routinely issue a local beer permit to the state licensee.

Appellant does not insist that a local license is unnecessary. Counsel for appellant has stated in his brief that wholesale beer distributors will not sell beer solely on the basis of a state license and that a local beer permit is required in order for a club such as appellant to purchase beer for sale to its customers. However, the point has not been developed either by evidence or by citation of applicable statute or regulations.

On October 7, 1975, the State Attorney General issued an opinion that a private club authorized to sell beverages by the drink under what is now Chapter 4 of Title 57 should also obtain a permit for the sale of beer from the local governing body where the club is situated, pursuant to statutes now codified as Chapter 5 of Title 57. Appellant does not appear to question that opinion. The fact that it and its counsel felt that a local permit was needed is inherent in their having filed the present complaint.

The statutes are detailed and complex, and they have been enacted piecemeal over the years with frequent amendments. The administration of Chapter 4 of Title 57 generally is entrusted to the Alcoholic Beverage Commission as previously stated, T.C.A. § 57–4–201(a). Nevertheless there appears in T.C.A. § 57–4–202(b) the following provision:

"When local or municipal beer or alcohol commissions responsible for controlling the sale of beer find violations, as defined in this chapter, in the sale of beer or malt beverages consumed on premises that result in the suspension of operation for specified periods of time, such beer or malt beverage sale suspension may also include suspension of such establishment's authority to sell alcoholic beverages for the same period of time, and said local or municipal commissions shall serve notice of the alcohol beverage suspension upon the alcohol beverage commission, which shall review that suspension within thirty (30) days of receipt of such notice, and render a decision affirming or reversing such suspension. Such decision shall be final, and any party aggrieved thereby may appeal the decision as provided by the Administrative Procedures Act, compiled in chapter 5 of title 4. Failure of the alcohol beverage commission to act within thirty (30) days shall be construed as an affirmation of such suspension. The provisions of this subsection shall not apply to counties with a metropolitan form of government."

It appears that the General Assembly, in enacting this provision as 1979 Tenn.Pub. Acts, Ch. 374, clearly intended that county or municipal beer boards could suspend the sale of beer in premises covered by state licenses, and that such commissions could also suspend the sale of alcoholic beverages, subject to review by the Alcoholic Beverage Commission. Again the distinction between the regulation of alcoholic beverages and that of the sale of beer is manifest, and this statute seems to indicate that local beer boards have supervision and police authority over state licensees in the dispensation of beer.

Chapter 5 of Title 57, dealing generally with the issuance of beer licenses, makes no exception for the holders of liquor-by-the-drink licenses from the State. T.C.A. § 57–5–108(a)(1) provides as follows:

"All incorporated cities and towns in the state of Tennessee are authorized to pass proper ordinances governing the issuance and revocation of licenses for the

storage, sale, manufacture and/or distribution of such beer and/or other beverages as herein prescribed within the corporate limits, providing a board of persons before whom such application shall be made, but the power of such cities to issue licenses shall in no event be greater than the power herein granted to counties, but cities and towns may impose additional restrictions, fixing zones and territories and providing hours of opening and closing and such other rules and regulations as will promote public health, morals and safety as they may by ordinance provide."

There are conflicting provisions in the beer statutes with respect to the hours for the sale of beer with those prescribed by the Alcoholic Beverage Commission. On December 6, 1983, the State Attorney General issued an opinion that where a private club is regulated both by a city beer board and by the Alcoholic Beverage Commission, the regulations of the Commission with respect to the hours of sale must prevail.

The General Assembly has recognized that there could be conflicts between local regulations and those issued by the state agency. In T.C.A. § 57–5–301(b)(1) and (4), local regulations which may affect the hours for the sale of beer are not to be applied to holders of state licenses under Chapter 4 of Title 57.

Primary control over the retail sale or consumption of beer has generally been vested in units of local government. *See* T.C.A. §§ 57–5–105 *et seq.* The Tennessee Alcoholic Beverage Commission has generally been given primary, although not exclusive, responsibility for regulating the distribution and sale of alcoholic beverages other than beer. *See* T.C.A. §§ 57–1–101 through 57–4–308. *See also Thompson v. City of Harriman,* 568 S.W.2d 92 (Tenn. 1978) (beer) and *City of Chattanooga v. Tennnessee Alcoholic Beverage Commission,* 525 S.W.2d 470 (Tenn.1975) (other alcoholic beverages). In the latter case it was held that both state and local governments have some regulatory functions with respect to the sale of alcoholic beverages, ·

and we are persuaded that the same is true with respect to the dispensation of beer by clubs and other permittees under Title 57, Ch.·4. As stated, appellant practically conceded by filing the present complaint that it needed a local beer permit as well as the state license in order to conduct sales of beer.

■ Of course, it has been long held in this state that, consistently with T.C.A. § 57–5–108, municipalities have extensive authority to regulate the sale of beer within their boundaries. This includes the authority to limit the number and location of retail outlets, both for on-premises and off-premises consumption. *See Watkins v. Naifeh,* 635 S.W.2d 104, 109 (Tenn.1982). In the present case, as previously stated, appellant does not attack generally the validity of the local ordinance of the City of Jellico limiting the number of beer permits authorized to be outstanding at any one time, nor does it claim that any of the other provisions of the ordinance are unreasonable or improper. It simply insists that as a holder of a state license it is entitled to have a permit issue automatically and as a matter of course.

■ Although the statutes on the point are complex, in our opinion they do not go as far as urged by appellant and free the holders of state licenses from the conditions and requirements of local governments respecting the sale of beer.

The judgment of the Chancellor is affirmed at the cost of appellant. The cause will be remanded to the Chancery Court for any further proceedings which may be necessary.

BROCK, C.J., and FONES, COOPER and DROWOTA, JJ., concur.