IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 4, 1999

## SMITH COUNTY, TENNESSEE v. DAVE ENOCH

**Appeal from the Chancery Court for Smith County**
**No. 6158      Charles K. Smith, Chancellor**

---

**No. M1999-00063-COA-R3-CV - Filed February 26, 2003**

---

Smith County filed this action to enjoin the maintenance of an automobile junkyard within one thousand (1,000) feet of a county road pursuant to the authority of Private Acts. The defendant admitted his violation of the Private Acts, but pleaded (1) the asserted lack of standing of the County to file the action, and (2) the asserted unconstitutionality of the Acts. The Chancellor sustained both defenses. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM C. KOCH, JR., J., WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ.

Jacky O. Bellar, Carthage, Tennessee, for the appellant, Smith County, Tennessee.

James B. Dance, Carthage, Tennessee, for the appellee, Dave Enoch.

**OPINION**
**PER CURIUM**

**I.**

At the outset we note a procedural problem that poses a well-nigh impervious obstacle to a resolution of this case at the appellate level: the lack of appropriate pleadings. As nearly as may be deduced, the case was reminiscently heard on the ancient doctrine of bill and answer, or, failing that description, upon a *sua sponte* oral order of judgment on the pleadings, neither of which is encompassed in the Rules of Civil Procedure.

The plaintiff alleged that the defendant owned, maintained, and operated an automobile junkyard on a county road in Smith County in violation of Tenn. Code Ann; § 54-20-103 *et seq.,*[1] and in violation of two (2) Private Acts which prohibit a junkyard within one thousand (1000) feet of a county road, with conditions. Injunctive relief was sought to abate the nuisance created by the violation. The defendant admitted his ownership and operation of the junkyard and that he was in violation of the Private Acts since he had more than ten (10) junked automobiles within one thousand (1,000) feet of the county road. He alleged that neither the county nor its Highway Department had the requisite standing to file the suit,[2] and that the Private Acts were unconstitutional.[3] The parties[4] agreed that the issues were strictly legal: standing to sue, and the validity of the Private Acts. Whereupon the Chancellor ruled that the County "does not have standing to bring this action," and that "the Private Acts are unconstitutionally vague." The plaintiff appeals and presents the stated issues for review, which is *de novo* on the record with no presumption of correctness. *See,* Rule 13(d), Tenn. R. App. P.; **State v. King**, 973 S.W.2d 586 (Tenn. 1998).

## II.

The Federal Highway Beautification Act of 1965[5] declared that the establishment and maintenance of junkyards adjacent to both interstate and primary system roads "should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." 23 U.S.C.A. § 136(a) (West 1990). As enacted, the federal legislation authorized the Secretary of Commerce to withhold ten percent of federal highway funds from states that by the beginning of 1968 "ha[d] not made provision for effective control" of junkyards and automobile graveyards. 23 U.S.C.A. § 136(b). Tennessee enacted laws requiring automobile junkyards to be set back at least 500 feet from state highways and even further from U.S. numbered highways. *See* Tenn. Code Ann. § 54-2-202 (1998). These laws, similar to the federal law, were concerned with preserving and protecting the "natural scenic beauty as well as aesthetic values" involved in laying out a road system.[6] It required persons maintaining

---

[1] These statutes are applicable only to the regulation of junkyards located on state roads. Since the junkyard of the defendant was located on a county road, the statutes have little application.

[2] The defendant did not articulate the reason(s) for this asserted defense, which was sustained by the Chancellor who likewise did not elaborate the basis for his conclusion.

[3] The record merely recites that "It is therefore ordered, adjudged and decreed that the answer of the defendant is amended to allege that the Private Acts of Smith County are unconstitutional." No reason(s) are asserted. The Attorney General did not participate but expressed his view that counsel of record could present their respective arguments which should suffice.

[4] There was another case, apparently filed by a citizen(s) which, we deduce, was non-suited.

[5] Pub. L. No. 89-285, 79 Stat.1028.

[6] *See* Act of March 2, 1965, ch. 352, 1965 Tenn. Pub. Acts 1044, 1045 (preamble).

automobile junkyards to erect view-blocking fences or hedges around their establishments. Tenn. Code Ann. § 54-20-203 (1998). In 1967, the Legislature accelerated its aesthetic regulation of junkyards and automobile graveyards with enactment of the Junkyard Control Act of 1967. *See* Tenn. Code Ann. §§ 54-20-101 through 124 (1998). The new Act was more detailed than the 1965 legislation, defining legal terms and providing procedures for screening-in junkyards and automobile graveyards, including the empowerment of the Department of Transportation to screen in property or acquire interest in the land covered by a junkyard or automobile graveyard for purposes of relocating it. The 1967 Act also expressly recognized that the State might enter into agreements with the federal Secretary of Transportation to enforce the Federal Highway Beautification Act in Tennessee.

Both the Federal Act and the 1967 State Act left leeway for local control of junkyards and automobile graveyards. The Federal Act provided that states could establish "standards imposing stricter limitation with respect to outdoor junkyards . . . than those established [by the federal law]." 23 U.S.C.A. § 136(l). Similarly, the 1967 State Act authorized local regulation of junkyards and automobile graveyards by providing that nothing in the State Act should be construed "to abrogate or affect the provisions of any lawful ordinances, regulations, or resolutions [that] are more restrictive than the provisions of this [Act]." Tenn. Code Ann. § 54-20-109.

In the case of Smith County, the additional local regulation came subsequently in the form of two Private Acts by the General Assembly: 1987 Private Acts Chapters 95[7] and 97.[8] The format and subject matter of these two Private Acts basically tracked the two statewide Acts from twenty years earlier: Chapter 95, emphasizing the regulation of automobile junkyards, roughly corresponded to Tenn. Code Ann. §§ 54-20-201 through 205, while the second Private Act, entitled the "Smith County Junkyard Control Act," generally mirrored the statewide Junkyard Control Act of 1967, codified at Tenn. Code Ann. §§ 54-20-101 through 124. For the people of Smith County, the Private Acts continued the process of aesthetic regulation of junkyards and automobile graveyards in their environs, filling gaps left by the Federal Highway Beautification Act and the statewide Acts passed during the sixties. Among other things the Private Acts extended regulation of junkyards and automobile graveyards to those abutting county roads.

We will first consider the constitutionality of the Private Acts, and begin with the presumption that legislative acts are constitutional. *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997). Therefore, to be invalid, a statute ordinarily must be found plainly at odds with a constitutional provision. *Perry v. Lawrence County Election Comm'n*, 219 Tenn. 548, 551, 411 S.W.2d 538, 539 (1967).

Mr. Enoch essentially makes two arguments that the Private Acts are invalid. First, he argues that they violate TENN. CONST. Art. I, § 8 and Art. XI, § 8, as well as the federal Equal Protection

---

[7] Act of April 30, 1987 Ch. 95, 1987 Tenn. Priv. Acts 189.

[8] Act of May 5, 1987, Ch. 97, 1987 Tenn. Priv. Acts 192.

Clause, because they "amount to a suspension of the general law against the inhabitants of Smith County." Second, he argues the Private Acts are so vague "as to deny due process of law." We consider these arguments separately.

Mr. Enoch argues that the two Private Acts applicable to Smith County vary materially from the statewide laws governing junkyards and automobile graveyards contained in Title 54, Chapter 20 of the Code, and that these differences rise to the level of placing the law in Smith County "in direct conflict with general laws of mandatory statewide application," which violates the constitutional guarantees (1) that general laws only will be passed and (2) that all persons will receive equal protection of the laws

Article XI § 8 of our Constitution provides that the legislature "shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land. . . ."

This Provision applies to private acts dealing with the functions of local governments. ***Brentwood Liquors Corp. v. Fox***, 496 S.W.2d 454, 457 (Tenn. 1973). In dealing with local matters, while the legislature can constitutionally enact private laws affecting only certain counties, it must tread carefully if the matters covered in the private acts are also the subject of statewide general laws. *See **Southeastern Greyhound Lines v. City of Knoxville***, 181 Tenn. 622, 628-29, 184 S.W.2d 4, 6-7 (1944). If the legislature passes a private act that burdens or benefits one county's inhabitants in a way inconsistent with the general laws of the state, then the private act may violate TENN. CONST. art. XI, § 8. ***Board of Educ. v. Shelby County***, 207 Tenn. 330, 353-54, 339 S.W.2d 569, 579-80 (1960).

Recognizing that the context of a private act is material on the issue of constitutionality, the Supreme Court in ***Sandford v. Pearson***, 231 S.W.2d 336 (Tenn. 1950) set out the first part of the constitutional test for private acts:

> Our cases make a clear distinction between (1) [p]rivate [a]cts which confer special benefits and impose special burdens on the citizens of one county, when there is no general statute, and when before the [p]rivate [a]ct, there was only the common law, and (2) those [p]rivate [a]cts which undertake to amend or abrogate a prior general statute in its application to a particular county or class of counties. Private [a]cts of the former class have been upheld, and those of the latter class struck down.

Notwithstanding the language in ***Sandford***, not all private acts that conflict with a statewide statute must be invalidated. There is a second part to the constitutional test: if a private act does suspend a general statute, TENN. CONST. Art XI, § 8 is not violated unless the private act creates classifications among targeted persons that are capricious, unreasonable, or arbitrary. ***Riggs v. Burson***, 941 S.W.2d at 53; ***Harwell v. Leech***, 672 S.W.2d 761, 763 (Tenn. 1984); ***Brentwood Liquors Corp. v. Fox***, 496

S.W.2d at 456-57. If the courts "can conceive of any possible reason to justify the classification, then the statute will be upheld." *Harwell v. Leech*, 672 S.W.2d at 764.

Article XI, § 8 of our state constitution provides the same protections to persons as does the federal Equal Protection Clause. *Brown v. Campbell County Bd. of Educ*., 915 S.W.2d 407, 413 (Tenn. 1995). Equal protection under the federal and state Constitutions does not require absolute equality. *Tennessee Small School Sys. v. McWherter*, 851 S.W.2d 139, 153 (Tenn. 1993) ("If [the different treatment] has a rational basis, it is not unconstitutional merely because it results in some inequality.") (quoting *Harrison v. Schrader*, 569 S.W.2d 822, 825 (Tenn. 1978)); *see also Genesco, Inc., v. Woods*, 578 S.W.2d 639, 641 (Tenn. 1979). The Equal Protection Clause requires that any differing treatment of people bear at least a rational relationship to some legitimate state purpose. Unless the individual challenging a statute can establish that the differences are unreasonable, the statute must be upheld. *Board of Trustees v. Garrett*, 531 U.S. 356, 121 S. Ct. 955, 964 (2001); *Tennessee Small School Sys. v. McWherter*, *supra*.

If Tennessee Constitution Article XI, § 8 is implicated, a challenged private act must do more than differ with the general law, it must flatly contravene a generally applicable statewide statute. *Riggs v. Burson*, 941 S.W.2d at 53; *Civil Service Merit Bd. v. Burson*, 816 S.W.2d 725, 731 (Tenn. 1991); *Leech v. Wayne County*, 588 S.W.2d 270, 273 (Tenn. 1979). In determining whether two laws impermissibly conflict, this court should construe the involved statutes in whatever reasonable way would render them both valid under the Constitution. *Metropolitan Gov't v. Reynolds*, 512 S.W.2d 6, 8 (Tenn. 1974). Because the legislature is presumed to have followed the Constitution in making laws, *State ex rel. Russell v. LaManna*, 498 S.W.2d 891, 895 (Tenn. 1973), we should try if possible, to construe the two pieces of legislation together reasonably to avoid putting them in direct conflict. *See Wright v. Cunningham*, 115 Tenn. 445, 455-56, 91 S.W. 293, 295 (1905); *Kentucky-Tenn. Clay Co. v. Huddleston*, 922 S.W.2d 539, 542-43 (Tenn. Ct. App. 1995).

We can construe the Private Acts harmoniously with the general laws in this case by determining if the statewide laws contemplate the possibility of stricter local regulations, which they do. The statutes applicable statewide provide that nothing in them "shall be construed to abrogate or affect the provisions of any lawful ordinance, regulation or resolution [that] are more restrictive . . . . Tenn. Code Ann. § 54-20-109. Localities are thus left free under the statewide laws to regulate junkyards and automobile graveyards more rigorously than the state does. In this case, the 1987 Private Acts are effectively county-specific regulations. *Cf. Harwell v. Leech*, 672 S.W.2d at 761-62 (dealing with a private act forbidding fireworks sales in Knox County); *Perry v. Lawrence County Election Comm'n*, 219 Tenn. 548, 551, 411 S.W.2d 538, 539 (1967) (upholding a private act imposing certain election qualifications on candidates in Lawrence County only); *Lindsey v. Drane*, 154 Tenn. 458, 459-60, 285 S.W. 705, 705 (1926) (regulating the confinement of livestock in Benton County); *Sullivan v. State*, 136 Tenn. 194, 195, 188 S.W. 1153, 1154 (1916) (regulating the confinement of livestock in Rhea County). As such, the statewide laws expressly anticipate that the county-specific Private Acts may be "more restrictive" than the general provisions in Title 54 of the Code. If the Smith County regulations are more stringent, no legal conflict is created between the Private Acts and the pre-existing public law under Tennessee Constitution Act XI, § 8. To borrow

our Supreme Court's language, the Private Acts, instead of conflicting, are "merely supplemental"[9] to the general statewide laws on junkyards and automobile graveyards.  While we agree with Mr. Enoch that the Private Acts pertaining to local Smith County roads differ in some ways from the general law on junkyards and automobile graveyards, those differences are consistent with the regulatory scheme provided by the statewide laws.  The Private Acts thus create no constitutional problems under either Tennessee Constitution Art. XI, § 8 or the Equal Protection Clause of the Federal Constitution.

Mr. Enoch also raises another alleged conflict between the Smith County Private Acts and general statewide law.  In answering the county's suit, he affirmatively asserted that he had met statewide "requirements" and had been "issued a license to operate a business" on his property.  The facts surrounding what kind of state-issued license Mr. Enoch holds were not developed in the chancery court.  The arguments in his appellate brief indicate that he may be licensed under Tennessee Code Title 55, Chapter 17, dealing with automotive dismantlers and recyclers.  Under the provisions in that chapter, businesses that recover parts from inoperable vehicles, thus reducing the vehicles to metal scrap, must obtain a license from the Tennessee Motor Vehicle Commission.  *See* Tenn. Code Ann. § 55-17-102(3), - 103, - 109(1) (1998).  In considering whether to issue a license to an automobile recycler, the Commission may consider many things, such as whether the applicant has been convicted of a crime involving moral turpitude and whether the applicant has practiced fraud in the course of conducting business.  Tenn. Code Ann. § 55-17-114(a)(3) and (6) (1998).  In addition, the Commission has promulgated  statewide regulations with which automobile recyclers must comply, such as requirements that they have sales tax identification numbers, Tenn. Comp. R. & Regs. r. 0960-2-.01 (1999), and that they carry liability insurance. Tenn. Comp. R. & Regs. r. 0960-2-.03 (1999).

Mr. Enoch argues that statewide regulation by the Motor Vehicle Commission covers the entire subject and that, "there is no statutory authority granted to any lesser governmental entity to duplicate" the Motor Vehicle Commission's regulation of automobile recyclers.  In other words, he maintains that once he has that body's approval evidenced by a license, Smith County cannot further interfere with his automobile salvage business.  The fallacy of this argument is that the regulations contained in the two Private Acts that he challenges did not come from a "lesser governmental entity" than the entity that enacted the automobile recycler licensing statutes.  Both the automobile recycler licensing statutes and the Private Acts regulating junkyards and automobile graveyards in Smith County came from the same source: the Legislature.

We note that the general scheme for regulation at the state level obviously leaves room for appropriate regulation at the local level.  *See e.g.*, Tenn. Comp. R. & Regs. r. 0960-2-.07 (1999) (providing that automobile recyclers to be licensed must show that the location of their business complies with all local zoning requirements); *cf.* **State ex rel. AmVets Post No. 27 v. Beer Bd.**, 717 S.W.2d 878, 881 (1986).  Here, the state law and the local laws complement, not contradict, each other.  The state licensing scheme aims mostly at regulating the conduct of persons running an

---

[9]**Patterson v. City of Chattanooga**, 241 S.W.2d 291, 294 (Tenn. 1951).

automobile salvage business, while the two Private Acts are aimed more at regulating the maintenance of the business premises from an aesthetic standpoint. The two bodies of regulations involved here do not conflict in a way that makes the local laws a suspension of the \general law. For that reason, we reject Mr. Enoch's argument on this point.

Mr. Enoch also attacks the Private Acts as being unconstitutionally vague. He argues that, in various places, their wording is "vague," "undefined," "subject to more than one interpretation," and even "meaningless." The Acts are so unclear, he claims, that they operate to deny him property rights in his business without affording him due process of law.

Recognizing that perfection in legal drafting is no more consistently attainable by legislatures than it is anywhere else, courts do not use grammatical, syntactical perfection as the standard when reviewing legislation challenged for vagueness. Due process of law only requires that legislation provide fair warning to persons of common intelligence of what is required of them or what on their part is prohibited. *State v. Burkhart*, 58 S.W.3d 694, 697 (Tenn. 2001). As the U.S. Supreme Court has explained, laws that are too vague offend at least two sets of American values:

> First, because we assume that man is free to steer between lawful and unlawful conduct, laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, to prevent arbitrary and discriminatory enforcement, . . . . laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99 (1972). Due process requires that legislative enactments be written clearly enough to forestall these evils. With an eye toward that, the constitutional test for vagueness is whether an act's prohibitions are so poorly defined as to be reasonably susceptible to differing interpretations about what is proscribed. *State v. Whitehead*, 43 S.W.3d 921, 928 (Tenn. Crim. App. 2000). An act passing that constitutional test will be upheld; courts will not invalidate enactments on vagueness grounds merely because they could have been drafted with greater readability. *State v. Wilkins*, 655 S.W.2d 914, 915 (Tenn. 1983).

Mr. Enoch stipulated that his automobile salvage business comes within the types of businesses regulated by the two Private Acts. So stipulating, he does not challenge the Acts as applied to him; instead, he challenges their constitutionality on their face. "When vagueness permeates the text of . . . a law, it is subject to facial attack." *City of Chicago v. Morales*, 527 U.S. 41, 55, 119 S.Ct. 1849, 1858 (1999). As the challenger, the burden is on Mr. Enoch to demonstrate that the two Private Acts are so amorphously worded that Smith Countians cannot determine what the Acts mean, how to obey them, or how to uniformly enforce them.

To meet this burden Mr. Enoch exegetes the Private Acts. For example, he argues that both Acts contain sentences from which words apparently have been inadvertently omitted, leaving the sentences confusing. Private Act Chapter 95 in its section on fencing-in automobile graveyards concludes: "A fence shall be required in any case when erection thereof would not effectively conceal a substantial portion of [an] automobile graveyard from the view of a person on [a] county road or dwelling." It appears that this sentence should read, "A fence shall *not* be required . . . when erection thereof would not effectively conceal . . . " (word added). *Cf.* Tenn. Code Ann. § 54-20-202(b) (1998). Similarly, Chapter 97 near its end provides: "on or after passage of this act, it shall be unlawful for any junkyard located within one thousand feet of the nearest edge of the right-of-way of any county road or within one thousand feet of any dwelling." As written, this is a sentence fragment. However, this passage appears to be modeled after the beginning of Tenn. Code Ann. § 54-20-113(a), which provides, "It is unlawful for any junkyard located within one thousand feet of the nearest edge of the right-of-way of any interstate or primary highway to operate without a junkyard control permit, which permits are hereby authorized to be issued by the [Tennessee Commissioner of Transportation]."

Mr. Enoch complains that Private Act Chapter 95's requirement of a "fence" seems at odds with the more general screening requirement found in Tenn. Code Ann. §§ 54-20-104, - 106. He argues that terms used in the Private Acts, like "county road system" and "dwellings" are nowhere defined within the four corners of either Act. He argues that while Private Act Chapter 97 does not regulate junkyards or automobile graveyards along "frontage roads," the Act leaves the distinction between frontage roads and other county roads unclear. He argues that while Private Act Chapter 97 refers to land "zoned for industrial use," Smith County lacks county zoning, making that phrase meaningless.

Mr. Enoch's other arguments are similar: that the phrase "county road designated by the county road department" used in Private Act Chapter 97 is unclear; that the Acts do not provide who has the power to enforce them and that, where enforcement would require erection of a fence, the Acts do not provide where a fence would have to be built and of what and by whom. Private Act Chapter 97 authorizes issuance of an injunction against automobile salvage businesses that constitute a nuisance, which is nowhere defined.

By use of all these lexicological examples, Mr. Enoch exegetes the Private Acts as imperfectly drawn, and, in the abstract, we might agree. That, however, is not the constitutional test. Many, if not all, of the shortcomings in the two Private Acts merely present ambiguities that might require a court to construe the language in its particulars when applying the Acts to specific fact situations. Courts called on to do that would tackle those ambiguities with well-known tools: supplying omitted words where necessary to effectuate the legislative intent; disregarding meaningless words as surplusage; remembering that legislation forming a system should be construed to make the system consistent in all its parts and uniform in its operation; giving words used with particularity priority over mere general language; presuming that undefined words used in an act carry their known, common law meaning; avoiding constructions that would produce absurdity; and reconciling seeming

inconsistent provisions where possible. *See* 23 Tenn. Jur. Statutes §§ 23-43 (1998 and Supp. 2001) (setting out the canons of statutory construction).

In our opinion, the less-than-perfect wording of the Private Acts presents a problem more of statutory ambiguity, than a case of unconstitutional vagueness. As we recently held: "That is not uncertain or vague which by the orderly processes of litigation can be rendered sufficiently definite and certain for purposes of judicial decision." ***Bean v. McWherter***, 24 S.W.3d 325, 333 (Tenn. Ct. App. 1999); *see also **State Dep't of Human Servs. v. Ogle***, 617 S.W.2d 652, 655 (Tenn. Ct. App. 1980). A land use regulation that can be upheld by giving it a reasonable construction will not be declared void for uncertainty. *Cf. **State v. Sanner Contracting Co.***, 514 P.2d 443, 445-46 (Ariz. 1973). As fact situations present themselves, the two Private Acts will be susceptible to reasonable application; consequently, we find that the Acts survive this facial constitutional challenge for vagueness.

**III.**

We now consider the issue of standing to sue. Assuming the Private Acts are constitutional, can the plaintiffs in this suit, Smith County and the Smith County Highway Department, sue to enforce them? "No," held the chancery court, on standing grounds. In this case, whether Smith County and the Smith County Highway Department have standing to seek the relief they have requested is a question of law that we review *de novo*.

Standing is a judge-made doctrine applied in appropriate cases to determine whether a plaintiff is entitled to seek judicial relief. ***Knierim v. Leatherwood***, 542 S.W.2d 806, 808 (Tenn. 1976); ***SunTrust Bank v. Johnson***, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000). In determining standing, the focus is on the party, rather than on the merits, of the party's claim. ***Mayhew v. Wilder***, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001). In cases involving an alleged violation of statutory law, the question of whether a party has standing to file an action requires a determination of whether the statutory provisions on which the claim rests grant persons in the plaintiff's position a right to seek judicial relief. ***Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't.***, 842 2d 611, 615 (Tenn. Ct. App. 1992).

The question of standing usually arises in relation to individuals or groups attempting to litigate public questions. *E.g.*, ***Mayhew v. Wilder***, *supra.* However, occasionally litigants challenge the standing of a governmental subdivision or a government agency. *E.g.*, ***State ex rel. Kessel***, 888 S.W.2d 430, 431-33 (Tenn. 1994) (holding that Knox County lacked standing in an annexation dispute); ***State ex rel. Comm'r of Transp. v. Medicine Bird***, 63 S.W.3rd 734, 771 (Tenn. Ct. App. 2001) (holding that the Commission of Indian Affairs lacked standing in litigation over the relocation of Indian graves). When analyzing the standing of a governmental body, courts may, in addition to looking at the enforcement provisions of an act, look at statutory provisions delineating the powers and duties of the governmental body.

In *Shelby County Election Comm'n v. Turner*, 755 S.W.2d 774 (Tenn. 1988), a dispute arose over whether an election was required to fill the position of juvenile court clerk. Some argued the position could be appointed; others argued it had to be filled through election. The Shelby County Election Commission filed a declaratory judgment action against the county commission, seeking definitive guidance. The county commission argued that the election commission lacked standing to seek a declaratory judgment. In analyzing the issue, the supreme court looked at the election commission's duties to prepare ballots and advertise elections. The court held that resolution of the dispute over the juvenile clerk position was a prerequisite to the election commission holding an election, and without a resolution, the commission would not know whether to proceed. Finding that the election commission was attempting to carry out its governmental duties, the supreme court held that the commission had standing to litigate the question. *Shelby County Election Comm'n v. Turner*, 755 S.W.2d at 776-77.

Regulation of junkyards and automobile graveyards adjoining publicly-traveled roads is a part of supervising roadways generally, which is a legal duty of counties. Tenn. Code Ann. § 5-5-119 (1998); *Ledbetter v. Clarksville & Russellville Tpk. Co.*, 110 Tenn. 92, 73 S.W. 117, 117 (1903). Although the enforcement provisions of the two Private Acts do not expressly name Smith County as the party to bring an enforcement action, the Private Acts cannot be read in a vacuum. Our duty is to construe the Private Acts as being consistent with the related general law where possible. *See Ferrell v. Cigna Prop. & Gas. Ins. Co.*, 33 S.W.3d 731, 738 (Tenn. 2000). We must also consider legislation in the light of reason and common sense. *Moore v. State*, 578 S.W.2d 78, 81 (Tenn. 1979); *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 738 (Tenn. Ct. App. 1989). By its terms, Private Act Chapter 95 gives "any citizen" the right to procure an arrest warrant if the provisions of the Act are not enforced. We decline to adopt the conclusion that any citizen may enforce the Act, but the county - which has the legal duty to supervise local roads - may not. We reject such a narrow reading and the chancery court's related conclusion that the county lacked standing.

There is no interpretative problem with Chapter 97. The enforcement provision Section 7, expressly allows the Smith County Road Commissioner to enforce the Act by seeking an injunction. The road commissioner is equated with the Smith County Road Department by express provision. When we construe those provisions of the Private Act together, the road department (called the "highway department" in the complaint) clearly has standing to seek an injunction against Mr. Enoch for violation of Private Act Chapter 97. We find the trial court erred in holding that the plaintiffs lacked standing to enforce the two Private Acts.

Chapters 95 and 97 of the 1987 Tennessee Private Acts are not facially unconstitutional, and Smith County and the Smith County Highway Department have standing to enforce them. We reverse the decree of the trial court and remand the case for further actions consistent with this opinion. Costs of this appeal are taxed to the appellee, David Enoch, for which execution may issue, if necessary.

PER CURIUM