IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 14, 2009 Session

**THE STATE OF TENNESSEE, ex rel. THE BOARD OF EDUCATION OF THE MEMPHIS CITY SCHOOLS, ET AL. v. CITY OF MEMPHIS, ET AL.**

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-1139-3      Kenny W. Armstrong, Chancellor**

**No. W2009-00366-COA-R3-CV - Filed January 13, 2010**

The City of Memphis and the Memphis City Council appeal the trial court's writ of mandamus ordering the City to restore funding to the Memphis City Schools for the 2008-09 school year in compliance with Tennessee Code Annotated § § 49-2-203 and 49-3-314. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Alan J. Wade, Brandy S. Parish, Javier Michael Bailey and John Gordon Howard, Memphis, Tennessee, for the appellant(s), City of Memphis and Memphis City Council.

Michael R. Marshall, Ernest G. Kelly, Jr., and Dorsey E. Hopson, Memphis, Tennessee, for the appellee(s), Board of Education of the Memphis City Schools.

Richard Lee Colbert, Memphis, Tennessee, for the appellee, Memphis Education Association.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General and Melissa Moreau, Assistant Attorney General, *Amicus Curiae* of the State of Tennessee.

**OPINION**

This appeal requires us to determine whether the statutorily mandated school funding provisions contained in Tennessee Code Annotated § 49-3-314(c) and § 49-2-

203(a)(10)(A)(ii), the "anti-supplanting statutes," and the Maintenance of Effort provisions, are applicable to the City of Memphis. The facts relevant to our disposition of this appeal are not disputed.

The City of Memphis ("Memphis" or "the City") provided funding in the amount of $84,731,347 to the Memphis City Schools ("MCS") for the 2007-2008 school year. In April 2008, the Board of Education ("the Board") of the MCS presented its 2008-2009 budget to the Memphis City Council ("the Council"). The budget requested City funding for the MCS in the amount of $93,532,000, or 10.68% of the total budget amount.[1] The Council approved a budget that provided City funding in the amount of $27,270,400. The reduction in funding resulted from a reduction in the amount of the City's ad valorem school tax.

In June 2008, the Board filed a complaint in the Chancery Court for Shelby County seeking a writ of mandamus or injunctive relief against the City. In its complaint, the Board asserted that the MCS was a special school district properly organized pursuant to private acts of the General Assembly in 1866-1869, as amended; that the City was a municipality with its own Charter; that the Charter as amended in 1951 permitted the City to levy an ad valorem school tax to fund the MCS; and that the City's reduction of school funding violated the statutorily mandated Basic Education Program ("BEP") and the anti-supplanting statutes. The Board further asserted that it had been advised by the State Department of Education that the State would interpret any reduction in the total amount of local funding to be in violation of the anti-supplanting provisions contained in Tennessee Code Annotated § 49-3-314, resulting in a loss of State funding in an amount exceeding $400,000,000.[2] The Board asserted that it would be unable to continue operating the MCS, which serves approximately 112,000 students, if the loss of funding should occur. The Board further asserted that the loss of funding would result in a "drastically inferior opportunity for education" in violation of the Education Clause of the Tennessee Constitution. It sought an order requiring the City to appropriate funds in an amount that at minimum represented a maintenance of local effort

_____

[1]The total proposed MCS budget for the 2008-09 school year was $931,966,343. In addition to the amounts requested from the City, the total budget included revenue in the amount of $423,090,550 from the State of Tennessee (48.32% of budget amount); $252,463,570 from Shelby County (28.83% of budget); $4,318,600 from Federal funds (.49% of budget); $8,030,000 from local funds (.92% of budget); $38,192,973 from the fund balance reserve (4.36% of budget); $8,139,610 from the BEP 2.0 fund balance reserve (.93% of budget); $10,000,000 from additional BEP 2.0 State funds (1.07% of budget); $94,199,040 from local sales tax (10.76% of budget).

[2]We note the Attorney General's May 4, 2009, Opinion stating that the Commissioner of Education has permissive authority to withhold some or all of the state education finance funds if a local education agency or local government fails to meet the requirements set-forth in Tennessee Code Annotated § 49-3-301, *et seq*. The withholding of state funding is not mandatory under Tennessee Code Annotated § 49-3-314(c). Op. Tenn. Att'y Gen. 09-70.

("MOE") from the previous year. The Board also filed a motion for a preliminary injunction requiring the City to approve and fund a budget for the MCS that preserved the local maintenance effort of the previous year. The Memphis Education Association ("the MEA") filed a motion to intervene, asserting that the loss of funding alleged by the Board would directly impact the contractual agreement between itself and the Board. The trial court granted the motion in July 2008.[3]

The City answered and counter-claimed on July 15, 2008. In its answer, the City asserted that it had no legal obligation to fund the MCS. The City asserted that it previously had "gratuitously agreed to levy a school tax and provide other sources of funding exceeding $27 million, despite no legal obligation to fund MCS." It asserted that the statutory maintenance of effort requirements were imposed on MCS and Shelby County, but not on the City. The City counter-claimed for alleged damages in excess of $152 million, which the City asserted resulted from *ultra vires* payments made by it to the MCS. The City asserted that, for the fiscal years ending on June 30, 1998, 2001, 2002, and 2005, it had levied school taxes in excess of the statutory limit of 85¢ per $100 of assessed property value, and that "[s]uch levies were *ultra vires* and void to the extent that such levies exceeded [the] City's statutory limit for school taxes."

On July 15, the Memphis City Council was added as a Defendant in the matter (hereinafter, Defendants will be referred to, collectively, as "the City"). The trial court heard the matter on July 17, 18 and 21, 2008. On August 15, the trial court entered an order requiring the parties to submit post-trial briefs by August 20, 2008. On September 5, 2008, the City moved the trial court to dismiss the intervening complaint of the MEA as moot.

On February 11, 2009, the trial court granted the City's motion to dismiss the claim of the MEA as moot with respect to the MEA's contractual claim, but denied the motion with respect to the MEA's statutory claims for relief. On February 17, 2009, the trial court entered a memorandum opinion finding that, although current funding for the school system exceeded the minimum funding mandated by the State BEP formula, the City was statutorily obligated to provide the MCS funding in the minimum amount of $84,731,347 for the 2008-2009 school year. The trial court ordered the City to provide "additional funding for the 2008-2009 school year in the amount of $57,460,947 to meet its statutory obligation as required by the 'maintenance of effort' provisions of our state's education statutes." On March 2, 2009, the trial court entered final judgment on the Board's claims and prayer for writ of mandamus pursuant to Tennessee Rule of Civil Procedure 54.02.

---

[3]Several charter schools also were allowed to intervene in the matter. They were dismissed without prejudice by a consent order entered by the trial court in February 2009.

On March 2, 2009, the City filed a motion to alter or amend or, in the alternative, to stay the judgment pending appeal. In its motion, the City asserted that it had complied with the mandamus by approving a budget that met the maintenance of effort requirement. It prayed the court to modify its judgment to eliminate the mandamus and substitute a declaratory judgment in favor of MCS. On April 21, the trial court denied the motion to alter or amend but granted the motion to stay enforcement of the judgment pending appeal. The trial court waived the requirement of a bond. The City filed a notice of appeal to this Court on February 17, 2009.

### *Issues Presented*

The City presents the following issues for our review:

1. Does the City's Charter authorize or require the City to provide operational funding to MCS?

2. Does any Tennessee Education Statute of general application require the City to provide operational funding to MCS?

3. If the answer to issues I and II above is No, does Tenn. Code Ann. § 49-3-314(c)(1), Tenn. Code Ann. § 49-2-203(a)(10)(A)(ii), or the doctrine of equitable estoppel require the City to continue any voluntary contributions it has made to MCS in the past?

The State of Tennessee filed an amicus curiae brief presenting the issue as whether the City of Memphis may lawfully reduce the operating budget of the Memphis City Schools by eliminating approximately $56 million in local funding that the school system had received from the City in the previous year.

The MEA also filed a brief presenting the following issues for review:

1. Did the City's reduction in funding for the MCS impair the statutory and contractual rights of the Association and the professional employees it represents?

2. Did the Chancellor err in dismissing the Association's contractual claims as moot?

## Standard of Review

This appeal requires us to determine whether the requisites of Tennessee Code Annotated § 49-3-314(c)(1) and § 49-2-203(a)(10)(A)(ii), the anti-supplanting statutes, and the maintenance of effort provision, are applicable to the City of Memphis as a "local government." The construction of a statute is a question of law which we review *de novo*, with no presumption of correctness attached to the determination of the trial court. *Waters v. Farr*, 291 S.W.3d 873, 881 (Tenn. 2009). Our objective when construing a statute is to effectuate the purposes of the General Assembly. Insofar as possible, the intent of the General Assembly should be determined by the natural and ordinary meaning of the words used in the statute, and not by a construction that is forced or which limits or extends the meaning. When the language of a statute is clear, we must utilize the plain, accepted meaning of the words used by the General Assembly to ascertain the statute's purpose and application. If the wording is ambiguous, we must look to the entire statutory scheme and at the legislative history to ascertain the General Assembly's intent and purpose. We must construe statutes in their entirety, neither constricting nor expanding the General Assembly's intent. *Id.* (citations omitted). In so doing, we assume that the General Assembly chose the words of the statute purposely, and that the words chosen "convey some intent and have a meaning and a purpose" when considered within the context of the entire statute. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004) (citations omitted).

## Discussion

We first observe that, although it has filed a brief and presented issues for our review, we do not have jurisdiction to address the issues raised by the MEA. The trial court entered its order granting a writ of mandamus in this matter pursuant to Tennessee Rule of Civil Procedure 54.02, making only its order on the Board's complaint for mandamus a final order in this case. No final order has been entered by the trial court with respect to the claims filed by the MEA as an intervening Plaintiff. Accordingly, we decline to address the issues raised by the MEA here.

In its brief to this Court, the City asserts that neither its charter nor the general statutes require it to levy school taxes in support of the MCS. It further argues that its past contributions to the MCS were voluntary, and that it is not a local education agency ("LEA") or "local government" for purposes of the education statutes. The City asserts that, under the taxing scheme adopted by the General Assembly in 1925, Shelby County and not the City is required to fund the MCS. The City cites Tennessee Code Annotated § 49-2-501 for the proposition that this scheme was reiterated in 1982, when the General Assembly reiterated the abolition of special school districts without taxing power. The City asserts that, "[a]lthough Shelby County is not the governing body of MCS, it is required to raise and

appropriate revenue for the students of the City[,]" and that nothing in the statutory scheme requires the City to fund the MCS. It submits, "MCS is an aberration under Tennessee's education laws. It is without any power to control its own destiny and exists only through apathy of state and local governments." It argues, "[h]owever, the state's administrative indifference regarding MCS' legal status does not create any obligation for the City to fund MCS." The City further argues that the MOE statutes are limited to funds generated by the BEP formula, and that the anti-supplanting provisions "neither expressly nor by implication pertain to 'additional sources' of funds transferred to LEAs that are not required by the Education Funding Statutes." The City asserts "[a]lthough the BEP continued the Anti-Supplanting Statutes without change, the statutory mechanics of the BEP all but eliminated the need for the Anti-Supplanting Statutes."

The Board, on the other hand, asserts that much of the City's argument is irrelevant. The Board asserts that the City's charter obligates the City to approve a budget for the MCS and allows it to fund the schools. It asserts that the "legal status" of the MCS is not an issue in this case, that the General Assembly has amended the City's charter since 1925, and that the requisite contributions to the BEP are not at issue in this case. The Board contends that the issue in this case is whether the anti-supplanting provisions, read in conjunction with the BEP statutes, are applicable to the City such that the City cannot reduce its funding in violation of the MOE provisions.

In its amicus curiae brief, the State asserts that the BEP and the anti-supplanting provisions are separate funding mechanisms which achieve different goals and that the City of Memphis is a local governing body for the purposes of the education statutes. It further asserts that the City does not have the authority to violate the statutory scheme, and that the City's charter mandates City funding of the MCS.

The issues presented by this appeal, therefore, as we perceive them, are 1) whether the Memphis City Charter authorizes the City to fund the MCS, a special school district established by private acts of the General Assembly and 2) if so, whether the general statutory sections contained in title 49, chapter 3, of the Tennessee Code with respect to the maintenance of local funding efforts and the anti-supplanting provisions are applicable to the City. With the positions of the parties and our standard of review in mind, we turn to whether the City is required to continue to fund the MCS in accordance with the anti-supplanting provisions of the general statutes and the MOE rule.

We turn first to the provisions of the Memphis City Charter. In its brief to this Court, the City does not argue that the Charter does not permit it to fund the MCS. Rather, the City asserts that the decision to provide funding to the MCS through an ad valorem school tax is discretionary. The City submits,

The charter does not mandate that the Council approve any budget unless it intends to levy an *ad valorem* tax to fund any part of MCS' operations. The City charter also authorizes but does not direct the Memphis City Council to levy and collect annually a general *ad valorem* tax for school purposes consistent with the MCS budget that has been approved by the Council for City funding. The charter specifically uses the language "authorized" and "not in excess of" and "not exceeding" when referring to the tax levy for the Memphis City Schools. The charter clearly makes the setting of a tax rate for the Memphis City Schools purely discretionary when it states: "the amount of tax to be levied for and paid to the board of education of the Memphis City Schools . . . shall be determined and fixed by the Memphis City Council, subject to the respective maximum (sic) hereinabove set out." The City charter does not establish any set or specific amount for any school tax levy, but simply directs that any such levy, if made, shall not exceed eighty-five cents (85¢) per $100 of assessed value. Such language is by necessity discretionary, because it relies on the Council to determine the amount of the levy, does not mandate any minimum amount.

Clearly, the Memphis Charter authorizes the City to provide funding to the MCS through an ad valorem tax. The City's argument, as we understand it, is that it is not *required* to provide funding to the MCS under either its Charter or the general education statutes. We disagree.

Section 773 of the Charter is entitled "Maximum rate of general ad valorem tax; taxes for school, park and library purposes." The section authorizes the City to collect an ad valorem tax upon all property within the City of Memphis, not to exceed a maximum of $2.25 on every $100 of assessed value "for all purposes." The section further provides that

in the event the levy as fixed hereinafter authorized for the board of education of Memphis city schools shall exceed sixty-five cents (65¢) on every one hundred dollars ($100.00) of assessed value, the said maximum tax rate for all purposes shall be two dollars twenty-five cents ($2.25) plus such amount as the levy for the board of education of Memphis city schools exceeds sixty-five cents (65¢) on every one hundred dollars ($100.00) of assessed value. . . .

The section establishes a limit in the amount of 85¢ per $100 of assessed value on the tax levy for the board of education. Subsection (b) of the section provides that "[o]ut of said levy each year there shall be paid, as collected, to the board of education of Memphis city schools, not exceeding eighty-five cents (85¢) on every hundred dollars ($100.00) of assessed value . . ." Although, as the City asserts, section 773 does not establish a definitive funding level, it clearly reflects the General Assembly's intention that the City assume some

obligation for funding of the MCS though an ad valorem tax.

The dispute regarding the City's obligation to fund the MCS is not new. In March 2005, the Attorney General issued an opinion stating that the City is legally obligated to provide funding to the MCS. Op. Tenn. Att'y Gen. 05-021. The Attorney General's opinion that the City has an obligation to provide funding for the MCS under both the City's charter and the general education statutes is supported by the case law. In 1959, the Board and the City filed separate actions against Shelby County seeking declaratory judgments that statutory provisions permitting Shelby County to divide county school funds on a basis other than average daily attendance under the general statute were invalid and unconstitutional as a provision for the benefit of one county.[4] *Bd. of Educ. of the Memphis City Schools v. Shelby County*, 339 S.W.2d 569 (Tenn. 1960). The supreme court agreed with the City and the Board that, insofar as the statutes permitted Shelby County to divide county educational funds in accordance with the provisions of private acts rather than the general law, the statutes violated Article XI, Section 8, of the Tennessee Constitution.[5] The court held that "all local county school funds of Shelby County, and the proceeds of all school bond issues in said County, will be apportioned and distributed in accordance with the general laws of the State governing such matters."[6] *Id.* at 586.

The supreme court's examination of the history of the private acts applicable to the funding of the MCS, and its interpretation of the philosophical underpinnings of the State's education statutes, are instructive here. In the 1959 action, the supreme court noted that the legislative intent of the Education Act was to "establish and maintain a *uniform system* of public education in this State[.]" *Id.* at 576 (emphasis in the original). The court emphasized

---

[4]The General Education Bill of 1947, Chapter 8, Public Acts of 1947, Section 16, provided:

All local elementary school funds raised or collected by any non-equalizing county shall be apportioned by the county trustee among the county, and the cities and special school districts therein, in the manner provided by paragraph five of Section 2348 of the Code of Tennessee, unless otherwise provided by Private Act. This paragraph shall not be construed to affect Chapter 752, Private Acts of 1929, but said Act shall continue in full force and effect.

*Bd. of Educ.*, 339 S.W.2d at 573.

[5]Under Chapter 351 of the Private Acts of 1955, Shelby County school funds were divided 50% to the County and 50% to the City. *Id.* at 573.

[6]As of March 31, 1959, the average daily attendance of students in the City school system was 77.37% of the total average daily attendance of students in the County and City schools. *Bd. of Ed. v. Shelby County*, 339 S.W.2d 569, 575 (Tenn. 1960).

the importance of a single, uniform method of funding public education that "gives to every school system its proportional and fair share of . . . funds, so, in a sense, each pupil may be afforded the same opportunity to obtain an education, regardless of place of residence." *Id.* at 578.

The court further found that the Board of the MCS was a proper party to the litigation, and that the Board has "the plain duty . . . to exercise every legal means for the protection and preservation of funds that may belong to the school system which it operates." *Id.* at 582. The court reaffirmed its opinion that the MCS was not exempt from the general law, stating that it "is not a municipal corporation but is in the same class with counties and occupies the same legal status." *Id.* at 583 (quoting *Barnett v. City of Memphis*, 269 S.W.2d, 906, 907 (Tenn. 1954)). Significantly, the supreme court observed that the taxpayers of the City "must" pay "an additional amount in school taxes, above the amount received from the county school taxes" to operate the City's schools. *Id.* at 583. Thus, the supreme court clearly has taken the position that the MCS system operates in the same manner as county school systems, that the general education statutes apply to the MCS, and that City taxpayers are obliged to pay school taxes in order to operate the City's schools.

We must also disagree with the City's argument that it is not a "local government" for the purposes of the general education statutes, and that the statutory scheme applies only to the county governments. The Code defines a "local education agency," or LEA, as "any county, city, or special school district, unified school district, school district of any metropolitan form of government or any other school system established by law[.]" Tenn. Code Ann. § 49-3-302(11). Clearly, the MCS is a school system established by law. Additionally, this Court has opined that the Code does not place an affirmative duty on counties to operate a school system when all of the county's students are served by municipal or special school districts. *City of Humboldt v. McKnight*, No. M2002-02639-COA-R3-CV, 2005 WL 2051284 (Tenn. Ct. App. Aug. 25, 2005), *perm. app. denied* (Tenn. Feb. 21, 2006). In *City of Humboldt*, it is stated that, contrary to Humboldt's assertion that the General Assembly was required to provide educational opportunities through the county, "the General Assembly has the broadest discretion to create or allow various entities to provide educational services to children in the state." *Id.* at *14-15. It is further stated, "the legislature has defined LEA or local school system to mean *any* system authorized by the legislature to deliver education[,]" and noted that the general statutes were applicable to those LEAs. *Id.* at *15-16 (emphasis in the original). It follows that the general education statutes are applicable not only to the county governments, but to the local governments which fund the schools. *City of Humboldt* supports the proposition that "local government" may include a municipal government. We agree with the Attorney General that the City is obligated to contribute to the funding of the MCS as a local government.

The City devotes considerable argument to its position that the provisions of the BEP, which the General Assembly enacted in 1992, have rendered the anti-supplanting provisions "superfluous." The State, on the other hand, asserts that the BEP and the anti-supplanting provisions are separate funding mechanisms with different goals. The State asserts that the goal of the BEP is to equalize educational opportunities through a system whereby the State provides greater funding to districts that are less capable of providing local funding, whereas the anti-supplanting statutes were enacted to prohibit local governments from supplanting or replacing local funding with State funds. The State argues that the two provisions co-exist, and that the General Assembly reinforced the anti-supplanting provisions by modifying the MOE rule in 1992, when it enacted the BEP.

The General Assembly enacted the BEP to remedy the constitutional deficiencies of the prior funding formula found in the Tennessee Foundation Program ("TFP"). *Tennessee Small Sch. Sys. v. McWherter*, 894 S.W. 2d 734 (Tenn. 1995); *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d 139 (Tenn. 1993). It is well established that, when construing a statute or statutory scheme, the courts presume that the General Assembly was aware of its prior enactments and the state of the law when it passed subsequent legislation. *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009). Thus, despite the City's assertion that the BEP "all but eliminated the need for the Anti-Supplanting Statutes," we decline to disregard those statutes where the General Assembly has not repealed them. There is no dispute in this case that the requirements of the BEP provisions have been met. We agree with the trial court that the City is also governed by the anti-supplanting provisions found in the Code and the MOE rule. The Code provides, in relevant part:

> (c) In order for any LEA to receive state education finance funds as set forth in this part, the system shall meet the conditions and requirements set out in subdivisions (c)(1) and (2). In order to enforce those conditions and requirements, the commissioner may, in the commissioner's discretion, withhold a portion or all of the state education finance funds that the LEA is otherwise eligible to receive.
>
> (1) No LEA shall use state funds to supplant total local current operating funds, excluding capital outlay and debt service. This subdivision (c)(1) shall not apply to a newly created LEA in any county where the county and city schools are being combined for a period of three (3) years after the creation of the LEA.
>
> (2)(A) Notwithstanding any other law to the contrary, for fiscal year 1992-1993 and any subsequent fiscal year, if state funding to the county for education is less than state funding to the county for education during the previous fiscal year, except that a reduction in funding based on fewer students in the county rather than actual funding cuts shall not be considered a

reduction in funding for purposes of this provision, local funds that were appropriated and allocated to offset state funding reductions during any previous fiscal year are excluded from this maintenance of local funding effort requirement.

(B) It is the intent of subdivision (c)(2)(A) to allow local governments the option to appropriate and allocate funds to make up for state cuts without being subject to a continuation of funding effort requirement as to those funds for any year during which the state reinstates the funding, or restores the previous cuts, and during any subsequent year should the state fail to restore the funding cuts.

Tenn. Code Ann. § 49-3-314(c)(2009). It further provides:

The state shall provide seventy-five percent (75%) of the funds generated by the Tennessee BEP formula in the classroom components and fifty percent (50%) in the nonclassroom components as defined by the state board. Every local government shall appropriate funds sufficient to fund the local share of the BEP. No LEA shall commence the fall term until its share of the BEP has been included in the budget approved by the local legislative body. From the local portion of such revenues, there shall be a distribution of funds for equalization purposes pursuant to a formula adopted by the state board, as approved by the commissioners of education and finance and administration. It is the intent of the general assembly to provide funding on a fair and equitable basis by recognizing the differences in the ability of local jurisdictions to raise local revenues.

Tenn. Code Ann. § 49-3-356(2009).

The MOE rule contained in the Administrative Code states:

(3) Review and Verification

(a) The budget submitted by each school system will be reviewed by the Department of Education to ensure that state funds are not being used to supplant local funds and that each school system has appropriated funds sufficient to fund its local share of the BEP.

(b) Revenue derived from local sources must equal or exceed prior year actual revenues - excluding capital outlay and debt service, and adjusted for decline in average daily membership (ADM).

Tenn. Comp. R. & Regs. 0520-01-02-.13(3)(a) & (b)(2009).

As the Attorney General opined in 2005, the City cannot effectively amend existing law and legislate the MCS out of existence as a special school district by reducing funding. There is nothing in the Memphis Charter or in the general statutory provisions to suggest that the City is not obligated to fund the MCS or that the City is exempt from the statutory scheme with respect to the anti-supplanting provisions or the MOE rule. Reading the case law together with the statutes and the City's charter, we believe the General Assembly has created a system in Memphis whereby both Shelby County and the City are required to fund the City schools in conformance with the BEP, the anti-supplanting statutes, and the MOE provisions.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellants, the City of Memphis and the Memphis City Council, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE